41  329
94  248

KIMBALL vs. FERNANDEZ and another.

LIBEL: PLEADING. *What defendant in libel may plead in defense or mitigation.*

1. Where words complained of as libelous allege a *habit* of committing a certain kind of unlawful or flagitious act, as well as a specific instance of the same, defendant may plead in defense or mitigation other specific instances of the same kind of act, of which plaintiff has been guilty. *Talmadge v. Baker*, 22 Wis., 625.

2. In libel for words which, besides charging plaintiff (a member of congress) with taking money for using his influence in procuring the appointment of B., as postmaster, also described him as "a man who makes appointments a source of personal revenue," the answer, after justifying as to the specific case mentioned, alleged, as a further defense and in mitigation of damages, that plaintiff had agreed to procure the appointment of T. as a postmaster in consideration of T.'s paying, or procuring to be paid, a mortgage outstanding upon land of plaintiff's brother-in-law. *Held*, that the allegations were relevant.

3. In the answer to such a complaint, allegations to the effect that plaintiff, as a candidate for reëlection to congress, spent large sums of money in corrupting the electors of his district, and delegates to the nominating convention, to induce them to vote for his renomination and reëlection, are irrelevant; as are also allegations charging plaintiff generally with incompetence for the office of representative in congress.

APPEAL from the Circuit Court for *Winnebago* County.

Action for libel. The words charged were published in the defendants' newspaper entitled "The Oshkosh Times," and were as follows:

"KIMBALL SELLING POST OFFICES.— MARKESAN, *October 3d, 1876.* — EDS. TIMES: We are so accustomed to hear of bribery and corruption among officials of the party in power, that they beget no surprise unless they come near home. When I state that *A. M. Kimball* was paid $200 for his influence in procuring the appointment of a postmaster, I am·only stating what is susceptible of proof. In November of last year, 1875, he received $200 from a person residing on the line of road from Stevens Point to Portage, known as the Wisconsin Central. The bargain was made and the money paid over on Sunday next following Thanksgiving day. How will honest people relish sending back to congress a man who makes appointments a source of personal revenue, and how will the moral class of people feel about again placing a man in this responsible position, who makes such contracts and takes his pay on Sundays? The gentleman who paid the money received the appointment, but he had to pay $50 more than a competitor for·the same position. How is that for post-traderships at home?"

The complaint sets out the publication of these words, with proper allegations by way of inducement, colloquium, and innuendoes; and it alleges "that the defendants published said article with intent to charge this plaintiff with violating the statutes of the United States relative to members of congress directly or indirectly receiving or taking money or property

from some person or persons, for procuring or aiding to pro-
cure an office or place from the United States or department
thereof for some person, and with intent to cause it to be be-
lieved that this plaintiff had violated said sec. 1781 of the re-
vised statutes of the United States, and was thereby guilty of
a misdemeanor and liable to the punishment by said section
prescribed; and that said article was so understood by those
who read it."

The answer alleged various matters, which may be thus
classified: 1. The second and third paragraphs merely charge
plaintiff with incompetency as a representative in congress
from his district. 2. The defendants admit the publication of
the words charged, but deny that they were published mali-
ciously, and also deny that they were false and defamatory,
and allege that they were true. 3. As to so much of the said
publication as charges that the plaintiff, while acting as a
member of congress, received $200 for his influence in pro-
curing for a certain person the office of postmaster, the defend-
ants allege that the same is true, and name one Barker as the
person for whom such office had been procured by the plaint-
iff for the sum named. 4. The answer then charges the
plaintiff at some length with having procured himself to be
renominated for congress at a political convention held in his
district, in September, 1876, by corruptly influencing and
purchasing delegates to such convention, etc.; and also charges
that after such renomination, and up to the time when this
action was commenced, plaintiff had been unlawfully and cor-
ruptly using money to induce electors in said district to vote
for him as such member of congress. 5. Defendants further
allege, in substance, that while the election for member of
congress in said district was pending, they received from a re-
spectable citizen of said district the communication alleged to
be libelous, with a request that they publish the same in their
newspaper for the information and benefit of the public, and
particularly of the electors of said district; that defendants

believed the matters stated in said communication to be true, and published it "with good motive and with justifiable ends." 6. "For a further defense    *    *    and by way of mitigation of damages," defendants allege in substance, that plaintiff agreed, in August, 1875, with one Tucker, to procure the appointment of postmaster at the city of Berlin for said Tucker, in consideration that the latter would pay or cause to be paid a mortgage for $1,200, then outstanding on the property of one Silver, who was a brother-in-law of the plaintiff.

The court, on the plaintiff's motion, struck out as irrelevant those parts of the answer numbered above 1, 4 and 6; and the defendants appealed from the order.

Briefs were filed by *Felker & Weisbrod* for the appellants, and by *Finch & Barber* for the respondent; and the cause was argued orally by *C. W. Felker* for the appellants, and by *Charles Barber* for the respondent.

For the appellants it was argued, that by the decision of this court in *Wilson v. Noonan*, 35 Wis., 321 (practically overuling a prior decision in the same case, 27 Wis., 598), it was adjudged, not only that mitigating circumstances may be set up in the answer, but that, if collateral circumstances and facts are relied on to show the absence of malicious motive, they *must* be pleaded; that it seems also well settled in those states where the code obtains, that whether the alleged libel be one from which the law implies malice, or one which requires express malice to be shown by extrinsic evidence, the defendant may plead any facts tending to show that he had good reason to believe the charge true, even if such facts do not show a justification, and thus at least partially relieve himself of the charge of malice (35 Wis., 321; *Bush v. Prosser*, 11 N. Y., 347); that the defendant may also show, in mitigation of damages, matters which, although they do not tend to prove the charge, yet show moral turpitude on the part of the plaintiff in matters analogous to those charged in the alleged libel, which repels the presumption of malice arising from the

fact of publication (11 N. Y., 363–4; 7 Cow., 613); that the defendant might have done this at common law (*Purple v. Horton*, 13 Wend., 9); that the gist of the action is the wrong done to the plaintiff's character, and by bringing his action he puts in issue, if not his general character, at least his character in respect to the matter involved in the charge. The words complained of charged plaintiff with corruption in his official position, and it is competent to show specific instances of official corruption, in mitigation. *Talmadge v. Baker*, 22 Wis., 625.

For the respondent it was contended, 1. That the matter charging plaintiff with incompetency as a member of congress was clearly irrelevant, and might also have been stricken out as scandalous. Wait's Code, 297; *Opdyke v. Marble*, 44 Barb., 64; *Bowman v. Sheldon*, 5 Sandf., 660; *Carpenter v. West*, 5 How. Pr., 53; *Mussina v. Clark*, 17 Abb. Pr., 188. 2. That the allegation charging the plaintiff with corrupting the voters of his district and bribing members of the nominating convention to vote for him as a candidate for congress, were also clearly irrelevant. The statute (Tay. Stats., 1444, § 29) permits the defendant in an action for slander or libel to allege in his answer both the truth of the words charged and any mitigating circumstances. It is the settled law of this country, that in such actions evidence of the plaintiff's bad character in respect to the *particular crime or fault charged* is admissible in mitigation of damages. *B— v. I—*, 22 Wis., 372; *Talmage v. Baker*, id., 625; *Wilson v. Noonan*, 27 id., 614; *S. C.*, 35 id., 348; *Conroe v. Conroe*, 47 Pa. St., 198; *Moyer v. Moyer*, 49 id., 210; *Fitzgerald v. Stewart*, 53 id., 344; *Leonard v. Allen*, 11 Cush., 241; *Benjamin v. Hopkins*, 1 Am. Law Reg., N. S., 168, and note; *Stone v. Varney*, 7 Met., 86. The libelous article charged the plaintiff with the specific offense of selling an office, in violation of sec. 1781, R. S. of U. S. In mitigation of damages defendants may show that plaintiff's general reputation in respect to the par-

ticular crime or fault charged is bad; perhaps they may show that his reputation is that of a corrupt public officer; but evidence of specific bad acts is inadmissible; and certainly the courts will not listen to evidence of particular acts of misconduct *of a different nature from the act charged.* To sell a post-office is to violate the laws of the United States; to bribe the members of a convention is to violate the laws of this state (ch. 56 of 1875); and while the former charge affects. the plaintiff as a public officer, the latter touches his conduct as a private citizen. The offenses are as distinct as forgery and theft, or murder and arson; and proof of the one cannot be offered in an action for libel in charging the other. Tayl. Ev., 354-356; 2 Greenl. Ev., 378; *Peterson v. Morgan,* 116 Mass., 350; *Bodwell v. Swan,* 3 Pick., 378; *Atwood v. Impson,* 20 N. J. Eq., 150. 3. That the allegations of the answer in regard to the appointment of Tucker as postmaster at Berlin were irrelevant. The rule is, that plaintiff's general reputation in respect to the fault charged may be shown in mitigation of damages; but the court will not go into the trial of a collateral issue in reference to any specific act of his conduct not referred to in the libelous article.

COLE, J. We are inclined to think the circuit court erred in striking out that portion of the answer relating to the alleged corrupt agreement to procure the appointment of Tucker as postmaster of the city of Berlin. The charge in the libelous publication in substance is, that the plaintiff, while a member of congress, used his influence to procure appointments to office for money or other valuable consideration; or, in the language of the libel, that he was " a man who makes appointments a source of personal revenue." In connection with this general imputation of official misconduct and corruption, is the charge that the plaintiff, in November, 1875, was paid $200 by a person residing on the line of road from Stevens Point to Portage, for his influence in procuring

such person's appointment as postmaster. But the gravest part of the publication is the charge of official misconduct in respect to appointments to office and in making them a source of personal gain or revenue. The habit of receiving money for procuring appointments is the crime imputed to the plaintiff, with a specification of a particular instance of that charge. Now, in that portion of the answer just referred to, which was stricken out, it is alleged, as a defense and also by way of mitigating the damages, that the plaintiff, as a member of congress, agreed with Tucker to procure him the appointment of postmaster at Berlin in consideration that Tucker would pay or cause to be paid the mortgage of $1,200 which the plaintiff held on the property of Silver, his brother-in-law, "which said sum was to be paid to him by the said Tucker as and for his services" as member of congress in aiding and procuring for Tucker the office of postmaster of said city. It is obvious that this was one instance of the plaintiff's habit of using his office as a source of profit. It was a particular act of misconduct of the same character as the offense charged. It is plain that the habit of receiving money as a consideration for procuring appointments to office could only be proven or shown by particular acts. In no other way could the defendants prove the truth of the libel, or establish the general bad character of the plaintiff in respect to the offense charged. It was therefore essential to their defense, and should not have been stricken out of the answer. In *Talmadge v. Baker*, 22 Wis., 625, which was an action for slander, the defamatory words charged a habit of stealing, as well as a specific theft. It was held that the defendant might show that the plaintiff had committed various acts of larceny, in order to make good the charge. This case seems to be in point on the question before us. Whether this matter could be given in evidence under the general denial, we shall not determine; for certainly it is more favorable to the plaintiff

Kimball vs. Fernandez and another.

to require it to be set out in the answer. $B$ —— $v.$ $I$ ——, 22 Wis., 372; *Wilson v. Noonan*, 35 id., 321-348.

There was no error in striking out the other matters referred to in the motion. The portions of the answer contained in the second and third paragraphs were clearly irrelevant. The same remark may be made of the third portion of the answer stricken out. That portion set forth with considerable detail that the plaintiff spent large sums of money in corrupting the electors of his district, and that he corruptly influenced or bribed, by the payment of money, divers persons who were delegates to the nominating convention, to vote for his nomination for congress. It may be true that this charged the plaintiff with the commission of a misdemeanor under ch. 56, Laws of 1876; but this was quite a different offense from that imputed in the libel. The matter in defense or mitigation of damages should be restricted to the particular offense charged in the publication, or to specific acts of that offense. This is as far as the rule has ever been extended by this court. The libel charges official corruption as a member of congress; and misconduct of a different nature cannot be shown either as a defense or in mitigation of damages. *Wilson v. Noonan*, 27 Wis., 598.

*By the Court.* — So much of the order as strikes out that portion of the answer first above referred to, is reversed, and the cause remanded for further proceedings according to law.