## GEORGE KNAPP & CO. v. ROBERT F. CAMPBELL

Delivered June 17, 1896.

**1.   Disqualification of Judge—Brother as Counsel.**
A judge is not disqualified to try a cause in which his brother is counsel for plaintiff, and whose fee is contingent upon a recovery.

**2.   Libel—Words Actionable Per Se.**
A publication that plaintiff "has been indicted several times for maintaining a gambling house" is libelous per se, since it charges the violation of a penal statute.

**3.   Same—Privileged Communication.**
A false accusation, though made in good faith and with reasonable ground for belief in its truth, is not justified by the fact that the party accused was a candidate for public office, where it appears that the office was one in the gift of the President of the United States.

**4.   Same—"Notorious" Not Actionable Per Se—Evidence in Justification.**
The word "notorious is not libelous per se, and, since the justification must be as broad as the charge, where this word is used in connection with other matter actionable per se, proof of a "notorious reputation" would not justify the publication; but actual bad character in the direction of the charge may be shown in mitigation of damages.

**5.   Practice in Trial Court—Argument to Jury—Reading Authorities.**
The trial judge should not permit counsel to read and comment on authorities in argument to the jury, when objection is made.

APPEAL from El Paso.   Tried below before Hon. C. N. BUCKLER.

*J. M. Dean* and *Burges & Burges,* for appellant.—1. The court erred in holding that the trial judge was not disqualified to try this cause, by reason of the fact that the evidence showed that he was a brother of counsel for plaintiff, and that counsel was directly and pecu-

niarily interested in the result of this suit, his entire compensation being dependent upon the recovery of a verdict in favor of the plaintiff. Constitution of Texas, art. 5, sec. 11; Revised Statutes of Texas (1895), art. 1068; Van Fleet on Collateral Attack, sec. 50; Mechem on Public Officers, sec. 518; Insurance Co. v. Price, 1 Hopkins' Ch. (N. Y.), 1; Black on Interpretatation of Law, sec. 7; Cooley's Constitutional Limitations (5th ed.), 72; 1 Story on the Constitution, sec. 455; Morrison v. Bachert, 5 Atl. Rep., 740.

2.   The alleged libelous language did not charge plaintiff with the violation of any penal law of this State, nor with any act calculated to injure him in his business or occupation, and so was not libelous per se. Behee v. Railway, 71 Texas, 424; Printing Co. v. Copeland, 64 Texas, 354; Cooley on Torts (2nd ed.), p. 256.

3.   Plaintiff being a candidate for office, and being considered by the appointing power for appointment to office at the time the publication complained of was made, such publication was privileged, and not libelous per se.   Printing Co. v. Copeland, 64 Texas, 358; Cooley on Torts (2nd ed.), 256; Behee v. Railway, 71 Texas, 428; Railway v. Behee, 21 S. W. Rep., 384; Railway v. Richmond, 73 Texas, 575.

4.   The alleged libelous publication having stated that the plaintiff was a character more or less notorious in the Southwest, and the defendant having pleaded the truth of this publication in justification, the action of the court in refusing to permit defendant to prove repeated offenses against the laws of the State by plaintiff, and repeated indictments therefor, for the purpose of establishing the notoriety of appellee, was error.

The plaintiff being a witness in his own behalf, it was competent to prove by him that he had violated the laws of this State, and had been prosecuted therefor.   Patten v. Belo, 79 Texas, 46; Newell on Libel and Slander, sec. 66; Odgers on Libel and Slander, p. 320; Carroll v. State, 32 Texas Crim. App., 433; Goode v. State, 32 Texas Crim. App., 508; White v. State, 33 Texas Crim. App., 177; Hutchins v. State, 33 Texas Crim. App., 298; Mahoney v. State, 33 Texas Crim. App., 388; Hargrove v. State, 33 Texas Crim. App., 456; Warren v. State, 33 Texas Crim. App., 500.

5.   It was error to permit counsel for plaintiff, in his closing argument, to read in the presence and hearing of the jury, and to comment on the facts of analogous reported cases.   Rules of District Court, No. 41;Railway v. Wesch, 85 Texas, 600; Willis v. McNeil, 57 Texas, 474; 1 Thompson on Trials, sec. 947; Insurance Co. v. Allen, 11 Mich., 501.

*J. A. Buckler* and *Davis, Beall & Kemp*, for appellee.—1.   The court was not disqualified to try the case, under the facts in evidence. Winston v. Masterson, 27 S. W. Rep., 691, 768.

2.   The alleged libelous language did charge plaintiff with the violation of the penal laws of the State, and was calculated to injure him in his business and occupation.   Penal Code, Title Gaming, arts. 355 to

367; Belo v. Wren, 63 Texas, 723; Holt v. Parsons, 23 Texas, 18; Behee v. Railway, 71 Texas, 428; Bradstreet Co. v. Gill, 72 Texas, 119; Zeliff v. Jennings, 61 Texas, 466; Publishing Co. v. Jones, 83 Texas, 306; Belo v. Fuller, 84 Texas, 453; Cotulla v. Kerr, 74 Texas, 89; 13 Am. & Eng. Ency. of Law, 299, 300, title "Libel"; Id., pp. 347, 348; Id., pp. 307, 308; McAllister v. Free Press, 76 Mich., 388, 15 Am. St. Rep., 318, Piper v. Woolman, 61 N. W. Rep., 588; Pfitzinger v. Dubs, 64 Fed. Rep., 696; Webster v. Sharpe, 21 S. E. Rep., 912; Newell on Libel, 779; Upton v. Hume, 21 L. R. A., 496.

3. Even if plaintiff had been a candidate for collector at El Paso, and the defendant had its claimed right to make said publication concerning him for the public good, it had no right to give it any greater publicity than to inform the President of the United States of what it knew or claimed to know of the plaintiff's character and fitness for said place. Behee v. Railway, 71 Texas, 429; Cotulla v. Kerr, 74 Texas, 94; McAllister v. Free Press, 15 Am. St. Rep., 318; Hunt v. Bennett, 19 N. Y., 173; Upton v. Hume, 33 Pac. Rep., 810; Publishing Co. v. Hillam, 55 Fed. Rep., 456; 59 Fed. Rep., 530; Belknap v. Ball, 47 N. W. Rep., 674; Smith v. Burrows, 16 S. W. Rep., 881.

4. The court did not err in refusing to permit the defendant to prove by plaintiff that he had been indicted in Bastrop County for purchasing county scrip or warrants while an officer in said county, and for violating the gaming laws of the State of Texas, as such testimony was wholly immaterial and was inadmissible for any purpose. If it was material testimony at all, the indictment was the best evidence, and it was incompetent to prove the fact orally, without accounting for the non-production of the written evidence. Insurance Co. v. Faires, 35 S. W. Rep., 55; Railway v. Johnson, 83 Texas, 633; Boon v. Weathered, 23 Texas, 675; Weir v. McGee, 25 Texas Supp., 20; Johnson v. Brown, 51 Texas, 65; Railway v. Lawson, 31 S. W. Rep., 843; Ayers v. Duprey, 27 Texas, 599; Roach v. State, 41 Texas, 264; Kennedy v. Upshaw, 66 Texas, 452; Dorsey v. State, 1 Texas Crim. App., 33; Marshall v. State, 5 Tex. Crim. App., 293; Thompson on Trials, secs. 458, 464; Brown v. People, 8 Hun., 562; Jackson v. Osborn, 2 Wend., 555; People v. Gay, 32 N. Y., 238; Peck v. Yorks, 47 Barb., 131; Newcomb v. Griswold, 24 N. Y., 298; Madden v. Koester, 52 Ia., 692; Shattuck v. Meyers, 13 Ind., 46; Long v. Morrison, 14 Ind., 595; 29 Am. & Eng. Ency. of Law, 804.

5. The court did not err in permitting counsel to read in the presence and hearing of the jury, and to comment on the facts of analogous reported cases. Ratto v. Bluestein, 84 Texas, 59; Railway v. Leake, 64 Texas, 657; Insurance Co. v. Prewitt, 65 Texas, 130.

FLY, ASSOCIATE JUSTICE.—Appellant was sued as a corporation, the basis of the suit being a certain publication that appeared in the "St. Louis Republic," a newspaper published daily in the city of St. Louis, Missouri, owned and controlled by said corporation. Actual damages

were prayed for in the sum of $30,000, and exemplary damages in the sum of $30,000. No special damages were alleged or proved. Appellant answered that the publication was a privileged one, warranted by the occasion, and that appellant was authorized and it was its duty to give the same to the public; that the same was not published with any malice or ill will to appellee; that the matter published was true; that appellee was a candidate for a public office; that the publication was made in good faith, was justified by the occasion, and was by appellant believed to be true, and that it had good reasons for such belief. The case was tried by a jury, and resulted in a verdict for appellee for $3000 actual and $2000 vindictive damages.

The first assignment claims that it was error in the District Judge to hold that he was not disqualified to try a cause in which his brother was counsel for appellee, and whose fee was contingent upon the recovery of appellee. Upon the authority of Winston v. Masterson (Texas Civ. App.), 27 S. W. Rep., 691, and same case, 87 Texas, 200, we hold the assignment not well taken.

In the third, thirty-third, thirty-seventh, forty-first, and forty-third assignments it is contended that the language of which complaint was made not being libelous per se, and no special damage being alleged, no cause of action was stated in the petition, and that the jury should have been instructed to return a verdict for appellant.

Language which necessarily, in fact, or by a presumption of evidence, causes damage to a person about whom a libelous publication is made, is denominated libelous per se. Publications of this class are actionable without proof of actual injury, for the reason that the natural and proximate result would be to cause injury to the person about whom they are written, and therefore it is presumed that they were injurious. Where the language used does not necessarily, but naturally and proximately causes damages, a prima facie right of action does not arise, but in order to recover there must be proof of special damages arising from the libelous publication. Townshend on Slander and Libel, secs. 146, 148; Cooley on Torts, pp. 228, 229.

While it has been supposed that, in the earlier stages of actions for libel, it was necessary in all cases to prove pecuniary loss in order to recover, still for a long while the distinction above drawn has been recognized, and is now recognized in courts everywhere in England and America; and they are in the habit of exercising the power of drawing the distinction for the jury. There is, however, some uncertainty as to a rule by which to distinguish the cases in which damage is necessarily implied from those in which, to give a right of action, special damage must be proved. Mr. Townshend, in his work on Slander and Libel, asks the question, "What language published in writing concerning an individual as such, is actionable per se?" He then proceeds to answer by giving the language used in opinions of different courts, as follows: "That language in writing is actionable per se which denies 'to a man the possession of some such worthy quality as every man is a priori to

be taken to possess,' or which 'tends to bring a party into public hatred or disgrace,' or 'to degrade him' in society, or expose him to 'hatred, contempt, or ridicule,' or 'which reflects upon his character,' or 'imports something disgraceful to him,' or 'throws contumely' on him, or 'contumely and odium,' or 'tends to villify him,' or 'injure his character or diminish his reputation,' or which is 'injurious to his character,' or 'to his social character,' or shows him to be 'immoral or ridiculous,' or 'induces an ill opinion of him,' or 'detracts from his character as a man of good morals,' or alters his 'situation in society for the worse,' or 'imputes to him a bad reputation,' or 'degradation of character,' or 'ingratitude,' and all defamatory words injurious in their nature. But, to sustain an action for libel, the plaintiff must either show special damage or 'the nature of the charge must be such that the court can legally presume he has been degraded in the estimation of his acquaintances, or of the public, or has suffered some other loss either in his property, character or business, or in his domestic or social relations, in consequence of the publication.'" Sec. 176.

It is said by Odgers: "Whenever the words clearly 'sound to the disreputation' of the plaintiff, there is no need of further proof. They are defamatory on the face of them, and actionable per se. The injury to the reputation is the gist of the action, and wherever that is clear, there is no need to inquire whether there is any injury to the pocket as well. But where it is by no means clear from the words themselves that they must have injured the plaintiff's reputation, there the court requires proof of some special damage to show that, as a matter of fact, the words have in this case impaired the plaintiff's good name." Odgers on Slander and Libel, p. 18. On page 21 of the same work, it is said: "Any written words are defamatory which impute to the plaintiff that he has been guilty of any crime, fraud, dishonesty, immorality, vice or dishonorable conduct, or has been accused or suspected of any such misconduct."

The general rule is thus stated by Judge Cooley: "Any false and malicious writing published of another is libelous per se, when its tendency is to render him contemptible or ridiculous in public estimation, or expose him to public hatred or contempt, or hinder virtuous men from associating with him." He then quotes from Stone v. Cooper, 2 Denio, 299, to the effect that "the nature of the charge must be such the court can legally presume the plaintiff has been degraded in the estimation of his acquaintances, or of the public, or has suffered some other loss, either in his property, character or business, or in his domestic or social relations, in consequence of the publication." Cooley on Torts, star page 206. If the publication charges an indictable offense it is libelous per se. Conroy v. Pittsburgh Times (Pa.), 11 L. R. A., 25. The above authorities have been substantially followed in this State. Zeliff v. Jennings, 61 Texas, 458; Democrat v. Jones, 83 Texas, 302; Hirshfield v. Bank, 83 Texas, 457; Belo v. Fuller, 84 Texas, 450; Belo v. Wren, 63 Texas, 686.

There has been some conflict of opinion as to the character of crime which is imputed to a person that will constitute matter that is actionable per se; but it was held in the case of Zeliff v. Jennings, above cited, that "an accusation is actionable whenever an offense is charged which, if proved, would subject the accused person to a punishment, though not such as is known in the books, technically, as an ignominious punishment, if the accusation be such as to bring disgrace on the person of whom the words are spoken." One of the definitions given of libel in the Penal Code, article 722, Revised Statutes of 1895, is to the effect that it must convey the idea "that the person to whom it refers has been guilty of some penal offense." It may be safely held, therefore, that the authorities in this State, by decision and statute, made it libel per se to charge a person with being guilty of a penal offense.

The charge is as follows: "It is hinted here that 'Poker Bob' Campbell, a character of more or less notorious reputation in the Southwest, who was a candidate for the collectorship himself at the time Clark was appointed, and who has been indicted several times in El Paso County for maintaining a gambling house, is the active spirit behind the charges against Mr. Clark."

Does the publication charge appellee with any violation of a penal statute of this State? We waive any discussion of the name attached to appellee, or the charge of notoriety, but take the words "has been indicted several times in El Paso County for maintaining a gambling house" as the basis of our opinion.

It is provided in the Penal Code:

"Art. 389. If any person shall permit any game prohibited by the provisions of this chapter to be played in his house, or a house under his control, or upon his premises, or upon premises under his control, the said house being a public place, or the said premises being appurtenances to a public place, he shall be fined not less than twenty-five nor more than one hundred dollars.

"Art. 390. If any person shall rent to another a room or house for the purpose of being used as a place for playing, dealing or exhibiting any of the games prohibited by the provisions of this chapter, he shall be fined not less than twenty-five nor more than one hundred dollars."

If the language used in the publication was such as to induce readers of it to infer that appellee had been guilty of either of the above defined offenses, it would be sufficient to constitute libel. In actions of this character, it is not essential that there should be a technical charge of violation of a penal law such as is required in an indictment. We are of the opinion that the words used would in their common acceptation convey the idea that appellee had been indicted for a violation of one or both of the articles of the Penal Code above quoted.

Following the brief of appellant, we have treated the subject as though there had been a direct charge against the appellee of maintaining a gambling house, but there was no charge made. The charge was that he had been indicted for maintaining a gambling house. Will the

accusation that a man has been indicted for violation of a penal statute stand on the same plane with a direct charge of a violation of the statute? Is such a charge actionable per se, or will it require proof of special damage to sustain the suit? We are of the opinion that such a charge is actionable per se. Odgers on Slander and Libel, pp. 57, 106.

"It is not necessary that the words, to be actionable per se, should make the charge in express terms. They are actionable if they consist of a statement of facts which would naturally and presumably be understood by the hearers as a charge of crime." Belo v. Fuller, 84 Texas, 450. The words quoted were used in a case in which the libel was as follows: "Gregorio Narvalle and Joe Fuller, a hack driver, were arrested and lodged in jail today on a charge of theft." The words were held to be actionable per se. The words of the libel complained of in that case now before this court could convey but one meaning, and that was that appellee had been indicted for and was guilty of a violation of a penal statute of this State. The accusation is intensified by the charge that he had been so indicted several times. The language of the publication being libelous per se, it was proper for the court to so charge the jury. Young v. Kuhn, 71 Texas, 645; Cotulla v. Kerr, 74 Texas, 90.

It follows that it was not necessary to allege special damage in the petition. When language that is actionable per se has been proved the plaintiff has made out a prima facie case, which may be rebutted by proof of a legal defense. In this case it was pleaded in the answer of appellant that appellee, at the time of the publication of the matter alleged to be libelous, was seeking to have the incumbent of the office of Collector of Customs at El Paso, Texas, removed, and was a candidate for the place in case of the removal of the incumbent, and that the publication was a privileged one. The witness Clark swore: "He, Campbell, was one of the candidates at that time in 1891." He was referring to the time of the publication of the article that forms the basis of this suit. The witness Moore swore that he was informed by an official in the appointment division of the Treasury Department at Washington that Campbell and his friends were trying to oust Clark, and that Campbell was an applicant for the position in case of the removal of Clark. The court instructed the jury: "Under the facts of this case, you are instructed that said publication is not privileged and was unauthorized."

"A privileged communication is a fair comment by a public journal upon a matter of public interest." Starkie on Slander and Libel, 332. "A communication made bona fide upon any subject matter in which the party communicating has an interest or in reference to which he has a duty, is privileged, if made to a person having a corresponding interest or duty, although it contain criminating matter which, without this privilege, would be slanderous and actionable; and this though the duty be not a legal one, but only a moral or social duty of imperfect obligation." Byam v. Collins (N. Y.), 2 L. R. A., 129.

Privileged communications are usually divided into those absolutely

privileged and those only conditionally so.   By an absolutely privileged publication is meant one for which, by reason of the occasion upon which it is made, no remedy is provided in a civil action for slander or libel.   Such are the opinions of judges of superior courts, and the speeches of members of congress or legislatures.   The other class of privileged publications, taking such a wide range, are not so easily defined.   Townshend defines it as the privilege to "publish, by speech or writing, whatever he honestly believes is essential to the protection of his own rights, or to the rights of another, provided the publication be not unnecessarily made to others than to those persons whom the publisher honestly believes can assist him in the protection of his own rights, or to those whom he honestly believes will, by reason of a knowledge of the matter published, be better enabled to assert, or to protect from invasion, either their own rights or the rights of others intrusted to their guardianship."

Townshend applies the same rule to publications about candidates for office as to communications about those seeking employment, his idea being that the rule applies to every kind of employment, "and office is only another name for employment."   He says:   "The right which one has to speak concerning a candidate for employment as a mechanic or domestic is neither more extensive nor more limited than the right one has to speak of a candidate for the office of a legislator or a judge.   As respects a candidate for employment generally, so with respect to a candidate for office; the publication, to be privileged, must, with certain exceptions, be limited to the persons interested.   A general publication, as well to those interested as to those not interested, will not be privileged."   Sec. 247.

The rule is generally accepted that, when a person becomes a candidate for public office, he will be considered as putting his character in issue, so far as respects his qualification for the office.   Anything pertaining to the qualification of the candidate for the office he is seeking is a proper subject for discussion, within certain limits.   Such discussion must, however, be confined to the truth, and must be pertinent to the issue relating to the question of the fitness or unfitness of the candidate for the office.   Printing Co. v. Copeland, 64 Texas, 354.   In the same opinion it is said:   "Then, if the matter published is true, and such as is justified by the occasion, there could be no recovery by the candidate against the publisher.   If the matter is not justified by the occasion, then the fact that the person against whom it was directed was at the time a candidate for office would not exempt the publisher from liability, whether the matter was true or false.   And although the matter published might be justified by the occasion, still, if it was false, a right of action would accrue against the publisher, to defeat which the burden would be upon him to show that the publication was made in good faith, in the honest belief of its truth, and besides, that there were just and reasonable grounds for entertaining that belief."

The doctrine is thus stated in Behee v. Railway, 71 Texas, 424:   "If

a privileged communication, though false, is believed to be true by the publisher, and the language used to express the communication is not unnecessarily disparaging, and it is not shown by extraneous evidence to have been actuated by a malicious intent to injure, there can be no recovery." Or, in other words, the Texas rule is the same laid down by Judge Cooley, that "there must be exemption from liability for any publication made in good faith, and in belief of its truth, the making of which, if true, would be justified by the occasion. There should, consequently, be freedom in discussing, in good faith, the character, the habits, and mental and moral qualifications of any person presenting himself, or presented by his friends, as a candidate for a public office, either to the electors or to a board or officer having powers of appointment." Cooley on Torts, p. 256.

The good faith and honest belief in the truth of the publication cannot be available as a justification, when the accusation is false, unless four things concur. First, it must be about a candidate for public office; second, it must be justified by the occasion; third, it must be made in good faith, and in the honest belief of its truth; and fourth, there must have been just and reasonable grounds for holding the belief. Curtis v. Mussey, 6 Gray, 261; White v. Nichols, 44 U. S., 266.

In Whittemore v. Weiss, 33 Mich., 353, Chief Justice Cooley said: "The judge charged the jury that malice is to be presumed from the publication and its falsity; that, to rebut this presumption, defendants must prove that they made the publication in good faith, believing it to be true in all its essential parts, and for a proper purpose. Defendants insist that the purpose is immaterial, if they believed what they published, and made the publication in good faith. This might be so if the publication had been true; but good faith cannot protect a false publication; nor can one excuse himself for making a mistaken assault upon his neighbor's reputation by showing the absence of malice, when, even had his charge been true, there was no purpose in bringing the matter to public notice. If one makes an attack which the occasion does not justify, there is no injustice in requiring him to show the truth."

In Peoples v. Tribune Co., 54 Mich., 462, it is said: "There can be no question, at this late day, but that the public newspaper has the right (whether it shall be regarded as its duty or not) to discuss those matters which relate to the life, habits, comfort, happiness and welfare of the people. In doing so it may state facts, draw its own inferences, give its own views upon the facts. It may err in its deductions, and if they are false they are not actionable unless special damages are shown; but false assertions, when they impute the commission of a crime, are actionable, and when not based upon any facts legally tending to prove the facts imputed, the publication cannot be said to be privileged."

In the case of Bronson v. Bruce, 59 Mich., 467, it is said: "To hold that false charges of a defamatory character, made against a candidate, are privileged as matters of law, if made in good faith, and that the

party making them is absolutely shielded against liability, it seems is a most pernicious doctrine."

The charge that appellee had been indicted for maintaining a gambling house was not shown to be true, and in order for appellant to justify it, it became necesary to show that appellee was a candidate; that the occasion justified the accusation; that the charge was made in good faith, and with the honest belief in its truth; and that back of the belief was the basis of reasonable ground for it. The evidence tended to show that appellee was a candidate for the collectorship at El Paso, and it was shown that the correspondent of the paper owned by appellant had received reliable information that appellee had been indicted for keeping a gambling house. It was also proved that he was known as "Poker Bob" Campbell. We are of the opinion, however, that the occasion did not justify the publication. Appellee was an applicant for a position in the gift of the President of the United States, by and with the advice and consent of the Senate  The specific charges against appellee were on file in the Treasury Department in Washington, and there was no occasion to send the accusation broadcast over the Union that appellee was guilty of maintaining a gambling house. Discussing the matter, it was said by the Court of Appeals of New York: "If the defendant's opinion of the plaintiff's character and qualifications as an officer had been contained in a remonstrance against his appointment to the office for which the defendant asserted he was a candidate, and had been presented to the appointing power, without an unnecessary publication in a newspaper, as in this instance, of wide circulation, the point would have been well made. As it is he had been assailed through the columns of a public journal, as if he was a candidate for the suffrage of the people, and not an appointing power consisting of a few persons. It was not, therefore, a privileged communication." Hunt v. Bennett, 19 N. Y., 173.

We have seen no authority in conflict with the above decision, unless it be the text quoted herein from Judge Cooley and copied into the decision in the Express-Copeland case. We do not think, however, that the language of Judge Cooley should be construed as announcing a contrary doctrine to that in the New York case, as that very case, with others that coincide with it, is cited by Judge Cooley in support of the text. The following authorities are in consonance with the Hunt-Bennett case:  Odgers on Libel and Slander, pp. 234 to 242, and authorities cited; Townsend on Slander and Libel, sec. 247; Lewis v. Few, 5 Johns., 1. The facts failing to show that the publication was a privileged one, it was not error in the court to so instruct the jury.

It is argued by appellee that it was pleaded that appellant meant by a notorious reputation that he was a man of bad reputation as to honesty, and that when appellant pleaded the truth of the publication he pleaded its truth as fixed by the innuendo, and that he was compelled to so prove it, in order to justify on the ground of its truth. The publication can be held to be libelous per se only when taken altogether and

as charging a crime, as hereinbefore indicated. It is not apparent on the face of the charge of "notorious reputation" that it was defamatory in its character, and an innuendo was essential to make out a case of libel. The word "notorious" would become libelous in itself only when qualifying some other word. It may be properly used in an innocent and even laudatory sense, as being synonymous with distinguished, remarkable, conspicuous, noted, celebrated, famous, renowned. The word being capable of a harmless meaning as well as an injurious one, it would be a question for the jury to decide which meaning was intended. If the meaning pleaded by appellee was, however, admitted to be the one intended by the answer setting up the truth of it, still appellee could not have recovered on that part of the publication without pleading and proving special damages. Odgers on Libel and Slander, pp. 82-87, 308. The appellee in his petition did not plead special damages, and could recover only on the ground that the publication was libelous per se, and consequently could not recover on that part of the publication that required innuendo to make it actionable. Hirshfield v. Bank, 83 Texas, 452.

It follows from what has been said that proof of "notorious reputation" would not justify the publication. In other words, under the pleadings, the charge as to notoriety was not divisible from the rest of the publication. "The justification must always be as broad as the charge, and of the very charge attempted to be justified." Fidler v. Delavan, 20 Wend., 57; Fero v. Ruscoe, 4 N. Y., 165; Townshend, Slander and Libel, sec. 331. While not justifying the publication, however, testimony as to reputation as a gambler would be admissible in mitigation of the damages. Any testimony that tended to show that appellee was a gambler, and permitted gambling in a house owned or controlled by him, was admissible in mitigation of damages. The gist of the action was the injury done to the reputation of appellee, and if he had no reputation to be injured, in the line of the accusation, he would not be entitled to substantial damages. Especially would the testimony be permissible on the cross-examination of appellee. Odgers on Libel and Slander, p. 305. Actual bad character in the direction of the charge, such as would be shown by proof of commission of other crimes of the same nature, may be shown in mitigation of damages. Kimball v. Hernandez, 41 Wis., 329; Leader v. State, 4 Texas Crim. App., 162; Larned v. Buffington, 3 Mass., 546; Bodwell v. Swan, 3 Pick., 376; Howe v. Perry, 15 Pick., 506.

In the closing argument to the jury, counsel for appellee read extracts from opinions of the Supreme Court in the case of Belo v. Fuller, 84 Texas, 450, and in Publishing Co. v. Jones, 83 Texas, 302, and commented on them very freely, to which action appellant objected. The courts of Texas have condemned the practice of reading authorities to juries and commenting on them, and it should not have been permitted by the trial judge. Even in one of the cases from which counsel was reading, it is condemned. Belo v. Fuller, 84 Texas, 450. In the qual-

ification of the bill of exceptions granted by the court, it is said that the court was not asked to exclude the remarks or to give special instructions relative thereto, which is followed by the declaration that the court did not do so of its own motion, "because, in the judgment of the court, the remarks were not improper." Doubtless the court would have had the same opinion had the motion been made. When the objection was made it called for a ruling, and the failure or refusal of the court to act on the objections was equivalent to an approval of the remarks, as the bill of exceptions indicates. Railway v. Wesch, 85 Texas, 593.

We do not wish to be understood as holding that reading and commenting on authorities would, standing alone, be sufficient to cause a reversal, in the absence of something that would indicate that the verdict was influenced by it. It is a practice, however, that is not to be commended in any instance.

The other errors assigned are not likely to occur on another trial, and need not be noticed.

The judgment is reversed, and the cause remanded.

*Reversed and remanded.*