Robert L. **CARDILLO**, Appellant,

v.

**DOUBLEDAY & CO., INC.,** et al., Appellees.

No. 787, Docket 74–2543.

United States Court of Appeals, Second Circuit.

Argued May 13, 1975.

Decided June 16, 1975.

Maurice N. Nessen, New York City (Nickerson, Kramer, Lowenstein, Nessen, Kamin & Soll, New York City, of counsel), for appellant.

James F. Rittinger, New York City (Robert M. Callagy, Satterlee & Stephens, New York City, of counsel), for appellees.

Before KAUFMAN, Chief Judge, OAKES, Circuit Judge, and JAMESON, District Judge.*

OAKES, Circuit Judge:

Robert Cardillo, presently incarcerated at the United States Federal Penitentiary at Lewisburg, Pennsylvania, appeals from an order of the United States District Court for the Southern District of New York, Murray I. Gurfein, *Judge,*[1] dismissing petitioner's civil libel suit and granting summary judgment for the appellees on the grounds that publication of *My Life in the Mafia* is protected by the First Amendment to the Constitution. We affirm.

Petitioner's complaint alleged that Doubleday & Co., Inc., Thomas Renner, Vincent Teresa, and Fawcett Publications published libelous statements about him in a book written by Renner and Teresa entitled *My Life in the Mafia.* Teresa is said in the book to be a high ranking figure in organized crime who became a Government witness and eventually published his story. Cardillo had known Teresa and was mentioned in Teresa's book as taking part in various criminal enterprises. Teresa is still under federal protective custody and has been the chief witness against over 20 individuals, including Cardillo himself, who have been convicted largely as a result of his testimony.

Judge Gurfein granted the appellees' motions to dismiss and for summary judgment under Fed.R.Civ.P. 56 on the basis of *Rosenbloom v. Metromedia, Inc.,* 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971), and *Kent v. City of Buffalo,* 29 N.Y.2d 818, 327 N.Y.S.2d 653, 277 N.E.2d 669 (1971), holding that the book is "a matter of legitimate public interest." Judge Gurfein found no actual malice in the publication of the book, that no statements were made "with knowledge that they were false or made with reckless disregard of whether or not they were false. *New York Times Co. v. Sul-*

*livan,* 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964)." He based his findings on the allegations in the affidavits that the editors and author Renner did extensive substantiation of the contents of the book. Finding the *Rosenbloom* and *Kent* cases sufficient for granting appellees' motions, Judge Gurfein stated that it was not necessary to reach the issue "whether the plaintiff is libel-proof because of his conviction and consequent incarceration." This appeal followed.

Cardillo argues that the New York Court of Appeals would limit its decision in *Kent* taking advantage of the latitude given in the development of state libel laws by the Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974). *Gertz,* decided after Judge Gurfein's decision below, permits states to disallow the *New York Times v. Sullivan* defense when neither public officials nor public figures are involved. Cardillo also claims that summary judgment should not have been granted because there were disputed issues of fact as to whether he is a public figure within *Curtis Publishing Co. v. Butts* and its companion case, *Associated Press v. Walker,* 388 U.S. 130, 162, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967), and whether appellees were negligent or acted with malice.

We need not determine whether New York would abandon *Kent* in the light of *Gertz v. Robert Welch, Inc., supra,* whether the appellees can claim the *Sullivan* privilege on grounds that appellant is a public figure by virtue of his criminal trials or whether summary judgment was appropriate. For we consider as a matter of law that appellant is, for purposes of this case, libel-proof, *i. e.,* so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages as to warrant dismissal of the case, involving as it does First Amendment considerations. *See Urbano v. Sondern,* 41 F.R.D. 355, 357 (D.Conn.), *aff'd,* 370 F.2d

---

* Of the District of Montana, sitting by designation.

1. Now United States Circuit Judge.

13 (2d Cir. 1966), *cert. denied,* 386 U.S. 1034, 87 S.Ct. 1485, 18 L.Ed.2d 596 (1967); *Mattheis* v. *Hoyt,* 136 F.Supp. 119, 124 (W.D.Mich.1955). *See also Gertz* v. *Robert Welch, Inc.,* 418 U.S. at 349, 94 S.Ct. at 3011 ("States may not permit recovery of presumed or punitive damages . . . ."). We by no means intend to suggest that prison inmates can be deprived of access to federal diversity jurisdiction to obtain redress of wrongs, including libels, committed against them whether they are in or out of prison. But here appellant is serving 21 years, sentenced for assorted federal felonies, including separate convictions for stolen securities and bail-jumping in the United States District Court for the Southern District of Florida, bail-jumping in the District of Maryland, and conspiracy and interstate transportation of stolen securities in the District of New Hampshire. He has been previously convicted of receiving stolen property and numerous minor infractions of the law in Massachusetts where he lived. His answers to interrogatories indicate that he was in Teresa's company "frequently" from 1963–69, knew Teresa to be a petty thief and confidence man, and was "directly involved" with Teresa "in several minor crimes, none of which were noteworthy or profitable." While he denies participation in a robbery mentioned by Teresa (*My Life in the Mafia* at 176) at, or above, Lindenbaum's Laundromat and claims that much of Teresa's story is fantasy, from 1967 to early 1969 he admits that Teresa, who was then in possession of a considerable quantity of money, and a "Joe Black" each told him they were in a "shylocking and bookmaking operation" (although he says Teresa was swindled by Black). He denies participation in numerous other specific crimes referred to in the appellees' book, including fixing a specific race, the Constitution Handicap at Suffolk Downs, but he was indicted in Massachusetts for fixing races at that track and apparently not tried only because of his present incarceration. The records of the House Select Committee on Crime, 92d Cong., 2d Sess., on Organized Crime in Sports (Racing) contain testimony at page 738 (May 24, 1972) of Joseph "The Baron" Barboza, a former organized crime "enforcer," substantiating Teresa's claim that Cardillo frequented the "Ebb Tide" which was where "the mob generally hung out" and that Cardillo fixed races at Suffolk by slowing down the favorites with drug injections. With Cardillo himself having a record and relationships or associations like these, we cannot envisage any jury awarding, or court sustaining, an award under any circumstances for more than a few cents' damages, even if Cardillo were to prevail on the difficult legal issues with which he would be faced.

Accordingly, we affirm the judgment below.

Judgment affirmed.