Harold Lloyd **FINKLEA**, Appellant,

v.

The **JACKSONVILLE DAILY PROGRESS**, the **Tyler Morning Telegraph, David Leary**, the **City of Rusk, Texas**, the **Rusk Police Department, Randy Hatch, Mike Thomas**, the **Cherokeean of Rusk, Texas** and **John/Jane Doe Number One**, Appellees.

No. 12-87-0021-CV.

Court of Appeals of Texas, Tyler.

Dec. 11, 1987.

Rehearing Denied Jan. 15, 1988.

Michael E. Jones, The Potter Firm, Tyler, John S. Ament, Jacksonville, Steven R. Guy, Rusk, for appellees.

Harold Lloyd Finklea, pro se.

BILL BASS, Justice.

This is a libel action in which summary judgment was granted in favor of all defendant newspapers and the City of Rusk and against plaintiff-appellant, Finklea. We affirm the judgment.

Finklea asserts the allegedly defamatory statement was made to news reporters by the Police Chief and Assistant Police Chief of the city of Rusk. The statement was

subsequently printed in the defendant newspapers in a news article regarding a plea of guilty entered by a former deputy sheriff to a charge of accepting a gift from Finklea, a person subject to his jurisdiction. The articles described Finklea as a convicted methamphetamine dealer with four drug convictions, "serving a twelve year sentence after he was convicted of operating a burglary ring in Jacksonville," quoting Rusk Police Chief Randy Hatch. Finklea's petition asserts the statements are untrue and defamatory and he incorporates as exhibits two indictments for theft over $750 but less than $20,000 which he claims are the basis of his present incarceration, his five-page F.B.I. Identification Record Master File (rap sheet), and a copy of an opinion by the Tyler Court of Appeals as a preliminary showing that he has never been convicted of distributing or possessing amphetamines and that he is not presently serving a term for operating a burglary ring.

All defendants moved for summary judgment based upon their defenses of truth and the "libel proof plaintiff" doctrine. The defendant newspapers also alternatively urged that the statements fall within their privilege of reasonable and fair comment under Tex.Civ.Prac. & Rem.Code Ann. § 73.002(b)(2) (Vernon 1986). The only summary judgment evidence submitted by defendants was an unverified copy of Finklea's F.B.I. Identification Record Master File. Finklea's response was not timely and was stricken. The trial court granted the motions without stating the specific ground for summary judgment. The summary judgment granted by the trial court must be upheld if it can be supported on either of the grounds of defense relied upon. *Borg–Warner Acceptance Corp. v. C.I.T. Corp.,* 679 S.W.2d 140 (Tex.App.—Amarillo 1984, writ ref'd n.r.e.).

Finklea's single point of error asserts the court erred in granting summary judgment since the defendants' motions were unsupported by summary judgment evidence. He argues that the F.B.I. rap sheet is not proper summary judgment evidence because it is unsworn and of no probative value because it is hearsay. He also contends that pleadings cannot constitute summary judgment evidence even if sworn.

While it is settled that pleadings do not constitute summary judgment proof, facts alleged in pleadings are judicial admissions. *Houston First American Savings v. Musick,* 650 S.W.2d 764, 767 (Tex. 1983). Finklea incorporated the F.B.I. rap sheet into his petition to demonstrate the absence of any conviction for methamphetamine possession or sale. So incorporated, its contents became part of the petition's fact allegations that, as admissions, may operate as proof sufficient to support summary judgment. · *Bailey v. Gulfway National Bank of Corpus Christi,* 626 S.W. 2d 70, 73 (Tex.App.—Corpus Christi 1981, writ ref'd n.r.e.). Finklea's petition also sets forth the contents of the newspaper accounts in the Tyler and Jacksonville newspapers.

The defendants also attached the newspaper articles and the rap sheet to their motion for summary judgment. Finklea complains for the first time on appeal that the rap sheet is unsworn and is hearsay. Finklea waived both objections by failing to raise them in the trial court. *Bailey,* 626 S.W.2d at 72. Hearsay admitted without objection has probative value. Tex.R.Evid. 803.

The summary judgment proof sustains Finklea's contention that he has not been convicted of amphetamine possession or sale and that he is not presently serving a sentence for burglary. But the proof does show a long record of arrests and convictions extending over the last twenty-five years, including several charges of burglary and some six convictions of burglary or theft. Although the news articles stated he had four drug convictions, it appears that Finklea was convicted once for the possession of a narcotic drug and once for the possession of a controlled substance.

Both newspapers urged in their motions for summary judgment that the statements in question reporting the conviction of Sgt. Charles Ewalt for accepting a gift from Finklea were conditionally privileged under

Tex.Civ.Proc. & Rem.Code Ann. § 73.002 (Vernon 1986) which, in pertinent part, reads. as follows:

Privileged Matters

(a) The publication by a newspaper ... of a matter covered by this section is privileged and is not a ground for a libel action

. . . .

(b) This section applies to:

(1) a fair, true, and impartial account of:

(A) a judicial proceeding, ...;

. . . .

(2) reasonable and fair comment on or criticism of an official act of a public official or other matter of public concern published for general information.

We agree. In determining whether the newspapers' account was fair, true or impartial, "[t]he critical test is the effect on the mind of the reader or listener; if the effect on the mind of the recipient would be the same, any variance between the actions charged and the actions proved should be disregarded." *Crites v. Mullins*, 697 S.W. 2d 715, 717 (Tex.App.—Corpus Christi 1985, writ ref'd n.r.e.). Even when the scale of the misconduct has been exaggerated manyfold, the substantial truth necessary to sustain the privilege is demonstrated "if no more opprobrium would be attached to appellant's actions merely because of such exaggeration." *Id.; see also Dudley v. Farmers Branch Daily Times*, 550 S.W.2d 99 (Tex.Civ.App.—Eastland 1977, writ ref'd n.r.e.) (appellant reported charged with theft of $168,000 of polyethylene scrap rather than $6,655.50).

Appellant was not shown to be a convicted methamphetamine dealer or head of a burglary ring. But the record does show that at the time in question he was convicted on two separate theft indictments, that he had previously been convicted of burglary and theft at least four times, and that while he was not a convicted methamphetamine dealer, he had been twice convicted of drug related offenses, one of which, possession of hydromorphone, carries a greater penalty than amphetamine sale. In our opinion, it is extremely improbable

that, in the mind of the ordinary reader, any greater opprobrium would attach to appellant's crimes as reported than to those crimes for which he has been convicted. Summary judgment on the basis of the conditional privilege contained in section 73.002 was properly granted.

Appellees also contend that the district court properly granted summary judgment based upon the "libel proof plaintiff" doctrine. They argue that at the time of the publication of the allegedly defamatory statements Finklea's reputation was already so poor that, as a matter of law, he could recover no more than nominal damages.

The doctrine was first enunciated by the Second Circuit in 1975 in *Cardillo v. Doubleday & Co., Inc.*, 518 F.2d 638 (2d Cir. 1975), which considered the plaintiff's claim that published statements that he had participated in certain crimes were defamatory. The court held as a matter of law that in view of the plaintiff's long history of criminal activity he was "libel-proof, i.e., so unlikely by virtue of his life as a habitual criminal to be able to recover anything other than nominal damages as to warrant dismissal of the case, involving as it does First Amendment considerations." *Id.* at 639. A year later, the Second Circuit declined to extend the application of the doctrine terming it "a limited, narrow one, which we will leave confined to its basic factual context." *Buckley v. Littell*, 539 F.2d 882, 889 (2d Cir.1976), *cert. denied*, 429 U.S. 1062, 50 L.Ed.2d 777 (1977).

Since first recognized in *Cardillo*, the doctrine has been adopted and applied in several jurisdictions. The cases that most compellingly invite its application are those cases, like *Cardillo*, in which criminal convictions for behavior similar to that alleged in the challenged communication are urged as a bar to the claim. Probably a substantial majority of the reported cases relate to the specific issue of the plaintiff's criminal conduct. *See, Wynberg v. National Enquirer, Inc.*, 564 F.Supp. 924 (C.D.Cal.1982) (plaintiff's past criminal convictions established a bad reputation which rendered him libel proof as a matter of law as to the

statements in question); *Logan v. District of Columbia,* 447 F.Supp. 1328 (D.D.C. 1978) (plaintiff was unable as a matter of law to prove an injury to his reputation in view of his long history of drug use, convictions for drug offenses, and convictions for other offenses); *Cofield v. Advertiser Co.,* 486 So.2d 434 (Ala.1986) (inmate precluded from libel action as a matter of law because of prior criminal convictions); and *Jackson v. Longcope,* 394 Mass. 577, 476 N.E.2d 617 (1985) (prison inmate was not libeled as a matter of law because of prior criminal convictions). *See also,* Annot., *Defamation: Who is "Libel Proof,"* 50 A.L.R. 4th 1257 (1986). While unwilling to acknowledge that anyone was "libel-proof" or the existence of such a doctrine, the D.C. Circuit has suggested "[t]here may be validity to the proposition that at some point the erroneous attribution of incremental evidence of a character flaw of a particular type which is in any event amply established by the facts is not derogatory ... That is so, however, not because the object of the remarks is 'libel proof,' but because, since the essentially derogatory implication of the statement ... is correct, he has not been libeled." *Liberty Lobby, Inc. v. Anderson,* 746 F.2d 1563, 1568 (D.C.Cir. 1984) (n. 6), *vacated and remanded on other grounds,* 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

■ Damage to reputation is the essence of libel. *Monitor Patriot Co. v. Roy,* 401 U.S. 265, 275, 91 S.Ct. 621, 627, 28 L.Ed.2d 35 (1971); *George Knapp & Co. v. Campbell,* 14 Tex.Civ.App. 199, 36 S.W. 765, 769 (1896). While injury to reputation is but one of several elements of general damage that the jury may consider in the assessment of damages in defamation, the others, such as personal humiliation, mental anguish and suffering, are those that presumably result from injury to reputation. Therefore, defamation claims must be predicated upon injury to reputation, although the claimant may waive injury to reputation as one of the separate elements to be considered by the jury in its assessment of damages without waiving his cause of action for injury to reputation. *See, Outlet Co. v. International Security*

*Group, Inc.,* 693 S.W.2d 621, 624 (Tex.App. —San Antonio 1985, writ ref'd n.r.e.). However, prior to the decision of the United States Supreme Court in *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974), it was the rule in Texas, as elsewhere, that it was not necessary to prove actual damage when the words used were libelous per se. The erroneous imputation of a crime punishable by imprisonment in jail or the penitentiary is libelous per se. *Belo v. Fuller,* 84 Tex. 450, 19 S.W. 616 (1892). Damages were presumed and juries free to assess purportedly compensatory damages without evidence of actual loss. Reasoning that the doctrine of presumed damages was inimical to "the vigorous exercise of First Amendment freedoms" because it invited the punishment of unpopular opinion rather than compensation of actual injury, the *Gertz* court restricted State remedies for defamation plaintiffs to damages for actual injury shown by the evidence except in those cases where the plaintiff showed the publisher's reckless disregard for the truth or knowledge of the falsity of the challenged communication.

■ It is clear that the doctrine should have only a limited application which presents the difficult problem of defining its scope. There are few so impure that cannot be traduced. Although a person's general reputation may be so bad as to render him libel proof on all matters, ordinarily even the public outcast's remaining good reputation is entitled to protection. *Ray v. Time, Inc.,* 452 F.Supp. 618, 622 (W.D.Tenn.1976). A convicted forger cannot be described as a "blood thirsty criminal."

In determining in what matters or issues it is impossible to defame the plaintiff, most cases invoking the doctrine narrow its application to those instances in which the challenged statement erroneously describes behavior similar or identical to that for which the plaintiff has been conclusively shown to be guilty. Another smaller group of decisions has applied the doctrine when the plaintiff challenges statements substantially less damaging to his reputation

than other unchallenged statements in the same communication.[1] By implicitly conceding the truth of the overwhelmingly derogatory portion of the statement, the plaintiff himself conclusively demonstrates that he had no remaining reputation in the matters touched by the challenged statement.

In both classes of cases applying the libel proof plaintiff doctrine, the validity of the "essentially derogatory implication" of the challenged statement has been established, either by the defendant's proof of substantially similar conduct or by the plaintiff's own tacit admission of more reprehensible behavior necessarily deduced from the plaintiff's failure to challenge the more disparaging part of the disputed statement.

■ It has long been the rule in Texas that the plaintiff's tarnished reputation may be shown in mitigation of damages. The libel proof plaintiff doctrine is the logical conclusion to be drawn from the principle underlying that rule: where there is no reputation it cannot be damaged and without damage to reputation there is no actionable defamation.

In the sole Texas case discussing the doctrine, the plaintiff complained that the defendant newspaper had falsely published details of a consumer fraud suit brought against him by the Attorney General. The defendant newspaper contended that his claim was barred because the articles could not have injured his reputation any more than it had already been damaged by the allegations in the Attorney General's suit. The Waco Court of Appeals held that the Attorney General's allegations of civil wrongdoing, however damaging, did not represent a sufficient basis for the invocation of the libel proof plaintiff doctrine as a summary bar to the plaintiff's libel claim. However, the opinion of the Waco Court of Appeals acknowledged that common sense argued for the application of the doctrine "in furtherance of judicial economy" in def-

amation cases brought by infamous plaintiffs. *Langston v. Eagle Publishing Co.,* 719 S.W.2d 612, 623 (Tex.App.—Waco 1986, writ ref'd n.r.e.).

More than judicial economy argues for the invocation of the doctrine. The United States Supreme Court has warned that the First Amendment forbids granting defamation plaintiffs "gratuitous awards of money damages far in excess of any actual injury." *Gertz v. Robert Welch,* 418 U.S. 323, 349, 94 S.Ct. 2997, 3012, 41 L.Ed.2d 789 (1974). The trial courts have been cautioned to first establish that a libel claim actually serves the purpose of the libel law which is to redress injury to reputation. Recognizing that the cost of a successful libel defense against a meritless claim is itself a burden stifling the exercise of First Amendment rights, the Supreme Court has said that judges must independently evaluate libel cases and summarily dispose of illegitimate claims. *See Bose Corp. v. Consumers Union of the United States, Inc.,* 466 U.S. 485, 104 S.Ct. 1949, 80 L.Ed.2d 502 (1984).

■ The record in this case shows without question that the plaintiff has a criminal record for burglary, theft and drug possession spanning the last quarter century, conduct substantially similar to that imputed to him in the challenged statements. Although none of his at least eight convictions was for sale of amphetamines, he was convicted in 1980 for possession of hydromorphone, denominated as an even more serious offense by our Controlled Substances Act. In the particular area of the appellant's character touched by the challenged statement, his involvement with drugs and burglary, the effect of the statements on Finklea's reputation is utterly inconsequential. It is impossible to envision a Texas jury awarding him any damages. In the unlikely event a verdict for damages was returned, on these facts it

---

1. For example, in *Jackson v. Longcope,* the allegedly libelous news article said that Jackson had been convicted of murder, kidnapping, rape and robbery; had been indicted for the slaying of two other young women in which all the victims were raped and strangled; and finally that he had been convicted of crimes associated with a shootout with the Cambridge police "during a stolen car chase." Jackson claimed he was libelled because not *all* the victims were raped and strangled and the shootout had not occurred during a "stolen car chase."

would be the duty of the court to set it aside. Under these circumstances, the imposition upon the defendants of the difficulty and expense of a further defense would not serve the purpose of the libel law which is to redress injury to reputation, but would instead place upon them a burden inimical to "the vigorous exercise of First Amendment freedoms." *See Gertz.* We conclude that Finklea is "libel proof" as to that area of his character touched by the challenged communications. Moreover, considering the statements' content and the appellant's record, it is our opinion and we hold that he has not been libeled because "the essentially derogatory implication of the statement is correct." *See Liberty Lobby,* 746 F.2d at 1568 (n. 6). The trial court properly granted summary judgment for all defendants.

The judgment is affirmed.