| | | |
|---|---|---|
| ROCKY LEE COKER, | ) | |
| | ) | Davidson Brd. & Tenn. Claims |
| Claimant/Appellant, | ) | Commission |
| | ) | Claim No. 97003162 |
| VS. | ) | |
| | ) | Appeal No. |
| DON SUNDQUIST, and the STATE | ) | 01A01-9806-BC-00318 |
| OF TENNESSEE CLAIMS | ) | |
| COMMISSION, | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

**FILED**

October 23, 1998

Cecil W. Crowson
Appellate Court Clerk

## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

### APPEAL FROM THE TENNESSEE CLAIMS COMMISSION
### AT NASHVILLE, TENNESSEE

### HONORABLE W. R. BAKER, COMMISSIONER, MIDDLE DIVISION

Rocky Lee Coker, C.P.L.
STSRCF, Unit 6, #108069
Route 4, Box 600
Pikeville, Tennessee 37367
PRO SE/CLAIMANT/APPELLANT

JOHN KNOX WALKUP
Attorney General and Reporter

Ms. Heather C. Ross
Assistant Attorney General
Cordell Hull Building, Second Floor
426 5th Avenue North
Nashville, Tennessee 37243-0499
ATTORNEYS FOR DEFENDANTS/APPELLEES

### AFFIRMED AND REMANDED.

HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR:
BEN H. CANTRELL, JUDGE

CONCUR IN THE RESULTS:
WILLIAM C. KOCH, JR., JUDGE

| | |
|---|---|
| ROCKY LEE COKER, | ) |
| | ) Davidson Brd. & Tenn. Claims |
| Claimant/Appellant, | ) Commission |
| | ) Claim No. 97003162 |
| VS. | ) |
| | ) Appeal No. |
| DON SUNDQUIST, and the STATE | ) 01A01-9806-BC-00318 |
| OF TENNESSEE CLAIMS | ) |
| COMMISSION, | ) |
| | ) |
| Defendants/Appellees. | ) |

# **O P I N I O N**

The captioned claimant has appealed from the order of the Claims Commission rejecting the claimant's claim for failing to state a claim for which relief can be granted.

Claimant's "Amended Complaint" states:

> 16. At all times material in this cause, plaintiff was confined on Unit 2 at Riverbend Maximum Security Institution (RMSI) in Nashville, Tennessee. Unit 2, RMSI, is the housing unit for those inmates sentenced to death, and is a small isolated group of inmates separated from the general population of inmates.
>
> - - - -
>
> DESCRIPTION OF INCIDENT
> Date of Occurrence: <u>On or about 2/10/96</u> Time:__A.M./P.M.
> Location: <u>Knoxville/Nashville, TN</u> State Agency involved: <u>Governor Don Sundquist</u>
>
> 1. On or about February 10, 1996, the defendant Don Sundquist, with malicious intent to injure plaintiff, published, or caused to be written and published, of and concerning plaintiff, in a certain newspaper called the Knoxville News Sentinel, printed and published at its Nashville Bureau, Davidson County, Tennessee, and Knoxville, Knox County, Tennessee, as well as throughout other areas across the State of Tennessee, and having a large circulation in said County of Davidson, wherein plaintiff then and there resided, certain false, malicious, and libelous statements and the words and figures following:
>
> 2. Defendant Sundquist, in his statements of and concerning plaintiff, published, <u>inter alia</u>, that plaintiff had committed the felonious crimes of mass murder and rape, and specifically "That [plaintiff] was the guy who committed 14 murders and two rapes on death row," and that plaintiff "committed the [m]ost grievous crime[s] imaginable." A copy of said publication is attached hereto as <u>Exhibit A</u>.

No Exhibit A appears in the record before this Court.  However, attached to the amended complaint is an unidentified photostatic document reading as follows:

**DISHING OUT CRITICISM**

Nashville - "I'm a pussy cat," Gov. Don Sundquist says.

That remark came last week when a radio reporter asked about accusations that he is "mean-spirited" in some of his dealings in state government.

At the prompting of press secretary Beth Fortune, the governor responded to one such accusation from some of the inmates of death row.  They accuse the governor of being "mean spirited" because he took away their satellite dish.

Three inmates and four citizens have filed a federal lawsuit against the governor and correction officials, claiming the satellite dish was paid for by donors and that the governor had no right to remove it.

"That was the guy who committed 14 murders and two rapes on death row who said I'm mean spirited," Sundquist said.  "If they think I'm mean-spirited, I would question the origin of the statement. How can someone who's committed the most grievous crimes imaginable - who is slated to be executed - expect to have television access that most people in Tennessee don't have"

"A satellite dish with all the Playboy channels may be dangerous to their health."

The dish carried HBO and Cinemax to the prisons at Nashville's Riverbend Maximum Security Institution.  The suit was filed by convicted murders Terry King, Rocky Lee Coker and Michael Sample.

Sunquist also commented on a remark he made while attending the National Governor's Association meeting in Washington, D.C., last week.

Sundquist called Republican presidential candidate Steve Forbes "goofy." At the time, the governor was wearing a large cowboy hat that some might label goofy.

"I probably shouldn't have said that," Sundquist said of the reference to Forbes.  "Sometimes you're brutally honest, and I'm doing my best to obey the 11th Commandment to not speak ill of another Republican.

"But sometimes you have to call them like you see them.  I'm going to try to do better."

- - - -

17.     Defendant's article in this matter, and attached to the original claim as Exhibit A, is entitled "Dishing Out Criticism - Sundquist lashes death row convicts who called him 'mean spirited.' " The statements in the article were intentionally made by defendant Sundquist, in a false and misleading manner, in retaliation for a civil action brought against him by three inmates names in the article.

18.     The statements made by defendant were therefore made specifically about the small group of inmates in the article, of which plaintiff was a member, were false, misleading, and the statements were directed at plaintiff. This is because plaintiff's name is explicitly stated in the article, and plaintiff is one of the three inmates in the small group who brought the civil action. Any reasonable person reading the article would know that defendant's statements were a direct, malicious and retaliatory act by defendant against the small group of inmates generally and against plaintiff particularly.

The Order of the Commission states:

The main reason why this Commission finds this to be a claim on which relief cannot be granted is that the newspaper article in question is not libelous or injurious at all. Any body who reads that newspaper article gets the message: men who have been sentenced to death in a Tennessee Court deserve to be deprived of entertainment, and when such men use language like "mean spirited" and go to Court to get their entertainment back then they are being ridiculous. Anybody who reads that newspaper article recognizes that the quotation, "That was the guy who committed 14 murders and two rapes on death row who said I'm mean spirited," was an exaggeration, just a piece of mockery; anybody who reads that newspaper sees that this statement is not statistically precise. All human-beings --not just holders of high offices and newspaperwomen-- use exaggeration sometimes. People may say that men sentenced to death by Tennessee juries have "committed the most grievous crimes imaginable," while they know that only people like Mao Tse-Tung and Pol Pot really have "committed the most grievous crimes imaginable." We all talk like that sometimes, and talking like that is not slander or libel. And there is a very good reason why it is not slander or libel: because nobody who hears it takes it with nit-picking precision. Take the case of the mother who says to her child, "You're just the worst little boy I've ever seen!" Nobody would say to her seriously, "You're a liar! You've seen two little boys this morning who are worse than he is!" This claimant is arguing that mockery is libel, and it is not.

- - - -

The State's motion to dismiss is granted. The complaint, as amended, is dismissed.

-4-

On appeal, the claimant presents the following issues;

     I.     Whether the Claims Commission erred in dismissing Plaintiff's complaint for libel and group libel, and erroneously found that Defendant Sundquist's statements in the article about Plaintiff were not libelous or injurious at all?

     II.     Whether the Claims Commission erred in dismissing Plaintiff's complaint, thereby failing to consider Plaintiff's claims of infliction of humiliation and emotional distress, and false light invasion of privacy?

Prior to consideration of appellant's issues, it must be recognized that this is a claim against the state and not a lawsuit against a newspaper or the person whose alleged oral remarks were allegedly published by the newspaper.

T.C.A. § 9-8-112 provides in pertinent part as follows:

     Final judgments against state employees. - (a) The board of claims is authorized to pay final judgments for state employees, as defined in § 8-42-101, for any damages, including interest thereon, which are awarded in a final judgment in a civil lawsuit against the employee in a court of competent jurisdiction where it is determined by the board that the incident on which such damages were awarded occurred when the employee was acting in good faith within the scope of such employee's official duty and under apparent lawful authority or orders.

     (1)     No final judgment or interest thereon shall be paid where the employee's conduct amounted to gross negligence or willful, intentional or malicious conduct.

The Claim does not allege a final judgment against the originator or the publisher of the allegedly defamatory statements. Moreover, the Claim states that the accused state employee acted "with reckless disregard, intentional, reckless and malicious, with improper motives and malice with intent to cause shock, mental suffering and severe emotional distress, humiliation, anxiety pain and suffering, and depression."

**First Issue**: Finding that alleged statements were not libelous or injurious.

The claim asserts that the claimant is a prisoner incarcerated on "Death Row." This is an admission that claimant is the subject of a final judgment of conviction of murder in the first degree.

Under the circumstances of this case, the appellant is "libel-proof; that is, as a matter of law would suffer no damages to his reputation by the words alleged to have been spoken. *Cardillo v. Doubleday*, 2nd Cir. 1975; 518 F.2d 638; *Ray v. Time, Inc., (*W.D. Tenn. 1976), 452 F.Supp. 618.

The claim fails to state an actionable wrong for the reason that it states that the alleged defamation referred to a group of three of which claimant is a member and the claim does not allege that the claimant himself was named in the alleged defamatory statement.

The gravamen of an action for defamation is injury to the reputation of the plaintiff - not injury to his self esteem, emotions or mental state.

Character is:

> The predisposition or habit, or aggregate of ethical qualities which belong to and distinguish an individual person; the general result of the one's distinguishing attributes.
> - - - -
> That moral predisposition or habit or aggregate of ethical qualities, which is believed attached to a person on the strength of the common opinion and report concerning him.
> - - - -
> Although "character" is often used in the sense of "reputation", the terms are distinguishable.
> - - - -
> "Character" is what a man is, and reputation is what he is supposed to be. "Character" depends on attributes possessed, and reputation on attributes which others believe one to possess.
>
> *Black's Law Dictionary, Fourth Edition, p. 294.*

The words, character and reputation have been used interchangeably because where character is relevant, it is proved by a "character witness" whose testimony must be confined to reputation. Thus, "character" must be proven by reputation and not by acts.

In *Quality Auto Parts Co., Inc. v. Bluff City Buick Co., Inc., et al*, the appeal was from the dismissal of the suit of an employee of Bluff City against his employer for slander by accusing him of falsifying records. The Supreme Court dismissed the slander action as time-barred and said:

> The basis of an action for defamation, whether it be for slander or libel, is the defamation resulted in an injury to the person's character and reputation.

Clearly, the words "character and reputation" were intended to mean "reputation in respect to character, for character may be shown only by reputation.

In *Little Stores v. Isenberg*, the plaintiff obtained a jury verdict for damages from a false allegation of shoplifting. This Court affirmed and said:

> The "character" of an accused means his fixed disposition or tendency, as shown by his habits, through the manifestation of which his general reputation, good or otherwise, is obtained. *Keith v. State*, 127 Tenn. 40, 152 S.W. 1029 (1913).

The claim shows on its face that the claimant is a convicted murderer worthy of death. Therefore, neither his reputation nor his character could be impaired by the language allegedly spoken and published.

This Court concludes that the State is not liable to a convicted murderer, for his character is judicially declared to be evil, and, as a result, his reputation is that of a murderer.

For the foregoing reasons, the claim fails to state grounds for recovery.

**Second Issue**: Humiliation, emotional distress, invasion of privacy.

These elements of damage may apply if a valid right of action for defamation is shown. However, the claim does not allege an actionable case of defamation without which there can be no recovery for humiliation, emotional distress or invasion of privacy.

No merit is found in appellant's second issue.

This opinion is not authority for the principle that prison inmates may not resort to the Courts to redress libels committed against them in or out of prison. *See Cardillo*, above.

The judgment of the Trial Court is affirmed. Costs of this appeal are assessed against the appellant. The cause is remanded to the Trial Court for necessary further proceedings.

**AFFIRMED AND REMANDED.**

_____
HENRY F. TODD
PRESIDING JUDGE, MIDDLE SECTION

CONCUR

_____:
BEN H. CANTRELL, JUDGE

CONCUR IN RESULTS:

_____
WILLIAM C. KOCH, JR., JUDGE