**Robert L. CARDILLO, Plaintiff,**

v.

**DOUBLEDAY AND COMPANY, INC., et al., Defendants.**

**No. 73 Civ. 1520.**

United States District Court, S. D. New York.

Nov. 15, 1973.

Robert L. Cardillo, pro se.

Satterlee & Stephens, New York City, for defendants.

GURFEIN, District Judge:

This action seeking damages for publication of alleged libelous statements appearing in MY LIFE IN THE MAFIA, a book written by defendants Renner and Teresa, published by defendant Doubleday and serialized by defendant Fawcett in its March and April, 1973 issues of TRUE MAGAZINE, was instituted on April 25, 1973. The plaintiff *pro se* Robert L. Cardillo is serving a twenty-one year sentence in the Federal Penitentiary for receiving stolen goods. One of the defendants in this libel action is Vincent Teresa. He was one of the main witnesses against Cardillo. The complaint seeks the sum of $4 million as compensatory damages against all the defendants and an additional $4 million as punitive damages against defendant Teresa.

Doubleday, Fawcett and Teresa have answered the complaint. Defendants' answers generally deny the material allegations pleaded in the complaint and by way of affirmative defense allege that with respect to the publication, the defendants were acting within the rights guaranteed to them by the First Amendment of the Constitution of the United States and that all matters contained in the book or any serialization thereof which are related to the plaintiff were protected by the First Amendment. The defendant Renner was never served with process in this action, but he is appearing voluntarily for purposes of joining in this motion to dismiss.*

Since joinder of issue, plaintiff has conducted extensive discovery of the defendants. Plaintiff has served notices to admit upon Doubleday and Fawcett, one set of written interrogatories addressed to Fawcett, one set addressed to Doubleday, one set addressed to Renner (which have not been answered because at the time said interrogatories were

served and until the filing of this motion, Renner has not been a party to this action), and five sets addressed to Teresa. (Teresa has answered the first three sets of Interrogatories prior to the making of this motion). Except as previously stated, all defendants have furnished full and complete responses and answers to plaintiff's notices to admit and interrogatories, about which plaintiff has not objected.

The statements which are the basis of this action are enumerated in paragraphs 5(a) through (o) of the complaint. Generally, these statements concern plaintiff's various criminal activities during the years in which he was acquainted with Teresa, some of which activities resulted in arrests and convictions.

[1] There can be no question that the subject of the book is one of great public interest. As stated in the Teresa and Renner affidavits submitted on this motion, defendant Teresa is said to be the highest-ranking organized crime figure ever to tell his story publicly. The plaintiff is a convicted felon with whom Teresa is said to have become associated at the time of his rise to power in organized crime in the New England area. The book presents an insider's view into the structure and hierarchy of organized crime. The public interest in Teresa's story goes beyond just the hierarchy and structure of the Mafia, but extends to the life, early background and exposures of one who becomes "successfully" involved in organized crime. Everything complained of in MY LIFE IN THE MAFIA relating to the plaintiff, and to Teresa, an admitted criminal whose life is a history of crime, is a matter of legitimate public interest.

Since MY LIFE IN THE MAFIA, and specifically, the statements about which plaintiff complains, were made to

---

* The motion to dismiss was filed on September 28, 1973 and was made returnable on October 17, 1973. Having received no opposing papers by October 17, 1973 from Mr. Cardillo, the Court advised him by letter that opposing papers must be submitted no

later than October 26, 1973. On October 24, 1973, the plaintiff wrote that he needed an additional extension, which on October 29 this Court granted until November 7, 1973. No papers have been filed by the plaintiff.

the public generally, and concern topics of legitimate public interest, it remains only to be shown that these statements were not published by the defendants with actual malice. Rosenbloom v. Metromedia, Inc., 403 U.S. 29, 91 S.Ct. 1811, 29 L.Ed.2d 296 (1971); Kent v. City of Buffalo, 29 N.Y.2d 818, 327 N.Y.S.2d 653, 277 N.E.2d 669 (1971).

■ Since the publications were in the public interest and of public concern, there can be no liability unless the publications were made with actual malice,— that is, with knowledge that they were false or made with reckless disregard of whether or not they were false. New York Times v. Sullivan, 376 U.S. 254, 280, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). Unless the defendants entertained "serious doubts" about the truth of the publications regarding the plaintiff, they are not guilty of "actual malice." St. Amant v. Thompson, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

■ There is strong evidence in the affidavits that Renner (the co-author with Teresa), the Doubleday editor, Thomas G. Congdon, and the Fawcett editor, William Iversen, did their best to substantiate the statements regarding the plaintiff. The co-author Renner is a life-long crime reporter, who has written a number of exposes of organized crime. He had extensive interviews with Teresa. He checked official records of the plaintiff's convictions for crime. He traced records of official investigations relating to offenses by plaintiff of which he has not been convicted. He relied on Teresa's record as a witness. Teresa's testimony or information had led to many convictions. He also submitted his manuscript to several officials engaged in investigating organized crime. Renner has never met the plaintiff.

Editor Congdon checked the background of Renner as a crime reporter for Newsday. He knew that the chief investigator for the McClellan Rackets Committee of the U. S. Senate had said that no man knows more about organized crime than Teresa. He found that Teresa had been "responsible" for forty-five convictions. He received a compilation of Teresa's witness record from Edward F. Harrington, the Federal Strike Force prosecutor who coordinated Teresa's appearances as a witness. Congdon even presented the outline of the book to Ralph Salerno, another Mafia expert, who reported that Teresa was a very important Mafia figure and that Renner was reliable and knowledgeable in the field of organized crime. He presented the manuscript to counsel for review on libel and privacy, and had Renner answer the questions of counsel and exhibit his file. He has sworn that he still believes the statements to be true.

Editor Iversen of Fawcett naturally relied greatly on Doubleday, whose reputation for reliability was excellent. Nevertheless, he inquired of Doubleday how they had satisfied themselves of the truth of the material, and was told much of what has been related.

None of the defendants, except Teresa, knew the plaintiff or had any reason to bear him actual malice. Their investigations were certainly adequate, and negate the sort of recklessness that sanctions liability. Even less care would not have justified a finding of malice. Kent v. City of Buffalo, supra. See also Monitor Patriot v. Roy, 401 U.S. 265, 91 S.Ct. 621, 28 L.Ed.2d 35 (1971); Garrison v. Louisiana, 379 U.S. 64, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964).

■ It is not necessary to advert to the question raised of whether the plaintiff is libel-proof because of his conviction and consequent incarceration. See Urbano v. Sondern, 41 F.R.D. 355 (D. Conn.1966), aff'd, 370 F.2d 13 (2 Cir. 1966), cert. denied, 386 U.S. 1034, 87 S. Ct. 1485, 18 L.Ed.2d 596 (1967). And see Mattheis v. Hoyt, 136 F.Supp. 119 (W.D.Mich.1955). For I am convinced that summary judgment must be granted under the Supreme Court cases cited. Frivolous libel suits should be dismissed

summarily to avoid the "chilling effect" on free speech that the requirement of an expensive and extensive defense would require. Dombrowski v. Pfister, 380 U.S. 479, 487, 85 S.Ct. 1116, 14 L. Ed.2d 22 (1965). See *N. Y. Times*, supra; *Kent*, supra, and Washington Post Co. v. Keogh, 125 U.S.App.D.C. 32, 365 F.2d 965, 968 (1966), cert. denied, 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967).

I am satisfied that if the *pro se* plaintiff had been a learned lawyer he could not have overcome the force of the authorities cited.

The complaint is dismissed under Fed.R.Civ.P. 56, and summary judgment is granted on behalf of the defendants.