**SCHIAVONE CONSTRUCTION CO. and Ronald A. Schiavone, Plaintiffs,**

v.

**TIME INCORPORATED, Defendant.**

Civ. A. No. 83–932.

United States District Court, D. New Jersey.

Aug. 13, 1983.

Schiavone Construction Co. Prior to his appointment as United States Secretary of Labor, Raymond J. Donovan was also affiliated with the plaintiff company. In late 1981, in response to numerous allegations linking Donovan to members of organized crime, a special prosecutor was appointed to investigate the asserted ties. On June 26, 1982, the special prosecutor, Leon A. Silverman, filed a report in which he concluded that there was insufficient credible evidence to support a prosecution of Donovan for the alleged wrongdoing. Additional allegations surfaced after the filing of this report, however, leading Silverman to reopen the investigation. On August 23, 1982, under the headline "Jury Still Out/Donovan probe is reopened", Time magazine reported on the reopening of the investigation. The final paragraph of the four paragraph story reads as follows:

> The FBI faces some tough questioning of its own. The Senate Labor Committee is investigating the bureau's handling of Donovan's confirmation probe 18 months ago. The personal files of FBI Director William Webster, forwarded to the committee last month, reveal that the name of Schiavone appeared several times in the bureau's reports on the 1975 disappearance of former Teamster Boss Jimmy Hoffa. That detail would surely have intrigued both the Senate committee that approved Donovan's nomination in February 1981, and the special prosecutor this year. But neither learned about it until last month.

Complaint, Ex. A.

On September 10, 1982, Silverman issued a supplemental report which concluded, as had the original report, that there was insufficient credible evidence to support a prosecution of Donovan. The supplemental report stated that among the documents provided to Silverman by Webster after the release of Silverman's first report was a memorandum from Webster to the Executive Assistant Director of the FBI, dated December 15, 1980. Defendant states that this memorandum formed the basis for its report that the name of Schiavone appeared

Connell, Foley & Geiser, Theodore W. Geiser, and Thomas S. Cosma, Newark, N.J., for plaintiffs.

Winne, Banta & Rizzi by Donald A. Klein, Hackensack, N.J., for defendant.

## OPINION

STERN, District Judge.

Plaintiffs Schiavone Construction Co. and Ronald A. Schiavone bring this action pursuant to 28 U.S.C. § 1332, contending that defendant Time, Inc. published a defamatory statement about them in the August 23, 1982 issue of Time magazine. Since we find that publication of the statement is privileged as a fair and accurate report of an official action or proceeding, the complaint will be dismissed.

## FACTS

Plaintiff Ronald A. Schiavone is an officer and principal shareholder of plaintiff

in the FBI's files on the Hoffa disappearance. As related in the supplemental report, the memorandum states, in pertinent part:

Mr. Edwin Meese called during my absence at 10:15 a.m. 12/12/80, and said that he would return the call upon my return. He was tied up with President-elect Reagan and asked Mr. Pen James to return the call, Mr. James asked whether we had reached any conclusion as a result of our inquiry into Pat [sic] Donovan. I checked with Mr. Revell and based on information which he supplied, as well as my recollection of conversation with Mr. Mullen while I was in New York on December 10th, that we had reviewed all our indices and had checked with all field offices and nothing negative had been disclosed. I advised that a company Chivone (PH), in which he apparently had a very substantial interest, had appeared a number of times in reports in our HOFEX [sic: Hoffex] case, but that none of these suggested any criminality or organized crime associations.

Supplemental Report of the Special Prosecutor, Ex. to Br. in Opp. to Defendant's Motion to Dismiss (Plaintiffs' Br.) at 38–39. The supplemental report states that Silverman interviewed Webster about the matter on August 13, 1982. The special prosecutor summarized the conversation with Webster about the December 15, 1980 memo as follows:

With respect to the December 15, 1980, memorandum, Director Webster stated that the Hoffex reference is incorrect—that, at the time of the December 12, 1980, communications, the Hoffex files had not been checked. Moreover, the Director stated that files had recently been checked and it was determined that there were no references to SCC therein.

The Director attributed that erroneous Hoffex reference to information which he received from certain subordinates. He was uncertain as to which of the subordi-

nates provided it. He stated that he did not know where he would independently come up with the Hoffex reference since he was not particularly familiar with the details of that file.

*Id.* at 41.

On November 12, 1982, plaintiff Ronald Schiavone wrote a letter to the defendant stating that Schiavone Construction Co. and its employees had been "severely damaged" by the defamatory allegations concerning the company which had been "made by others" and published by the defendant. Complaint, Ex. B.[1] The letter went on to state:

Given the torrent of slander issuing from protected sources over many months against which we were virtually helpless, the inference of guilt at least to some extent is understandable. The media, through its publishing and republishing of the allegations understandably (indeed in most cases, forgivably) but alas unfortunately, exacerbated our problem. What we now fail to understand, in light of the Silverman reports, is that none of the major media have seen fit to publicly ponder the possibility of an organized effort to "get Donovan," even though a careful reading of the Special Prosecutor's reports grants ample opportunity for such conjecture.

We have no doubt that the accusations made by individuals or leaked from government sources (which subsequently proved to be false) were accurately reported by you. Comprehending the difficulties you must encounter in sorting truth from fiction in such matters of public interest we do not hold you at fault even though the law in New Jersey has stricter standards. Though innocent, you have been used and we have been thereby abused in the political jeremiad against Ray Donovan, the Secretary of Labor of the United States.

The letter was drafted after the text of the December 15, 1980 memorandum was made public by its inclusion in the supplemental Silverman report.

---

1. At oral argument on defendant's motion to dismiss the complaint, counsel for plaintiffs acknowledged that he had helped Schiavone draft this letter. Tr. of July 11, 1983 at 10–11.

After reviewing some of the allegations involved, discussing the Silverman reports, and stating the company's determination to clear its name by exposing and bringing to justice those who had falsely accused it, the letter concluded:

> If you will be good enough to give this letter (excepting this last paragraph if you choose) reasonable prominence in your publication at least once, prior to December 10, 1982, we will be entirely satisfied that such publication would meet any legal requirement under "retraction" and would indeed be as much as we could fairly expect from you under the circumstances.

*Id.*

Defendant, through counsel, responded to this letter by stating that it felt that it had responsibly reported on the Donovan matter and that any suggestion of a retraction was inappropriate. It also indicated that it printed only letters "of suitable length and of general interest" and that Schiavone's letter did not meet these criteria. (Schiavone's single-spaced, typewritten letter exceeded three pages in length). Responding in turn, Schiavone took issue with Time's suggestion that Time had acted responsibly, referring to six articles published by the magazine and stating that "[n]o objective reader could regard those stories as other than defamatory." Complaint, Ex. D.[2] Schiavone went on to state that "[i]t is not 'responsible' reportage to accurately report false and misleading information, and where the medium itself actively participates in the solicitation of such information, its conduct should be condemned." *Id.* Schiavone argued that "[i]n some cases TIME *accurately* but *incompletely* reported *false* information," and quoted the fourth paragraph of Time's August 23, 1982 article, Webster's December 15, 1980 memorandum, and the relevant section of the special prosecutor's supplemental report. *Id.* (emphasis in original). The letter concluded by stating that "a truly responsible journal

would welcome the opportunity to redress injustice in which it had participated and consequently we request appropriate retraction." *Id.* Defendant, again through counsel, responded that its "best information was that the statement published by TIME [regarding the Hoffex reference] is totally accurate" and stated that it disagreed with Schiavone's thoughts on what constitutes responsible journalism. Complaint Ex. E.

Soon after receiving this second response from defendant, plaintiffs filed this action, contending that the fourth paragraph of the August 23, 1982 story was defamatory and false and that the "conscious, deliberate, willful, malicious and negligent conduct" of defendant had damaged plaintiffs' reputations and had caused plaintiff Ronald Schiavone mental anguish.[3] Defendant filed this motion to dismiss the complaint for failure to state a claim on the ground that the statement asserted to be defamatory is privileged as an accurate report of an official record or proceeding. Defendant notes that plaintiffs "do not challenge the accuracy of the report." Br. in Support of Defendant's Motion to Dismiss at 2. In their responding papers, plaintiffs do not contradict defendant's assertion that they concede that the statement at issue is accurate. Rather, they argue that discovery is required before the applicability of the privilege can be determined, and assert that the privilege can be defeated in this case if it is shown that Time did not rely on the December 15, 1980 memo in making the allegedly defamatory statement or that Time printed the statement for the sole purpose of harming plaintiffs. Plaintiffs' Br. at 5–8. At oral argument on the motion to dismiss, plaintiffs for the first time argued that the article was not a fair and accurate report of the December 15, 1980 memorandum because it did not include the memorandum's statement that none of the references to Schiavone suggested any criminality or organized crime associations. Tr. of July 11, 1983 at 2–3, 8–9, 11–12.

---

**2.** None of these articles, other than the one dated August 23, 1982, is at issue in this suit.

**3.** At the Court's direction, plaintiffs subsequently filed an amendment to the complaint to assert a basis for federal jurisdiction.

## DISCUSSION [4]

■ The fair report privilege permits the press, and perhaps others, to publish fair and accurate accounts of official actions or proceedings without fear of incurring liability for republishing a defamatory statement. As stated in § 611 of the Restatement (Second) of Torts:

The publication of defamatory matter concerning another in a report of an official action or proceeding or of a meeting open to the public that deals with a matter of public concern is privileged if the report is accurate and complete or a fair abridgement of the occurrence reported.

■ Plaintiffs concede that New Jersey recognizes the fair report privilege as set forth in § 611 of the Restatement. Tr. of July 11, 1983 at 8, 15. *See Swede v. Passaic Daily News,* 30 N.J. 320, 332–33, 153 A.2d 36 (1959) (recognizing the privilege as set forth in § 611 of the Restatement (First) of Torts); *Coleman v. Newark Morning Ledger,* 29 N.J. 357, 379, 149 A.2d 193 (1959) (same).[5] Plaintiffs also do not challenge defendant's assertion that the article in question is a "report of an official action or proceeding" within the ambit of the privilege. *See Medico,* 643 F.2d at 140–46 (report on FBI documents regarding plaintiff which were not generally available to the public and which stated only tentative conclusions found privileged).

Plaintiffs first contend that there is a factual question as to whether or not the Time article relied on the December 15, 1980 memorandum in stating that the FBI's Hoffex files contained references to Schiavone. Citing *Bufalino v. The Associated Press,* 692 F.2d 266 (2d Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 2463, 77 L.Ed.2d 1340 (1983), the plaintiffs argue that if Time was not aware of the December 15, 1980 memorandum in preparing its August 23, 1982 story, the privilege cannot attach. This argument is untenable. First, what *Bufalino* holds is that § 611 of the Restatement cannot be read "to protect *unattributed,* defamatory statements supported *after-the-fact* through a frantic search of official records." *Bufalino,* 692 F.2d at 271 (emphasis added). The opinion has no relevance to situations, such as the present one, in which the allegedly defamatory statement is properly attributed by the republisher to official records which form the basis for the later assertion of the privilege.[6] Moreover, the Third Circuit has held that "Pennsylvania law squarely contradicts" the argument that the fair report privilege is defeated by a showing that "the report reflects the contents of the official materials merely by coincidence." *Medico,* 643 F.2d at 146–47. In reaching this conclusion, the court relied on *Binder v. Triangle Publications, Inc.,* 442 Pa. 319, 275 A.2d 53 (1971), which held that the fair report privilege attaches to accounts of judicial proceedings which are relayed through an intermediary to a reporter who has not attended the proceeding. Since New Jersey courts have also rejected the argument that the fair report privilege does not attach when an article "reports not the proceeding directly, but what an attendant at the proceeding stated transpired there," *Nusbaum v. Newark Morning Ledger Co.,* 86 N.J.Super. 132, 147, 206 A.2d 185 (App.Div.), *cer-*

---

4. Since the parties implicitly agree that New Jersey law is controlling, and since there is no reason for the Court to disturb this choice of law, we will apply New Jersey law. *Medico v. Time, Inc.,* 643 F.2d 134, 136 n. 2 (3d Cir.1981), *cert. denied,* 454 U.S. 836, 102 S.Ct. 139, 70 L.Ed.2d 116 (1981).

5. New Jersey has also enacted a statute granting a qualified privilege to newspaper reports of "official statements issued by police department heads and county prosecutors in investigations in progress or completed by them." N.J.Stat.Ann. § 2A:43–1.

6. The notion that defendant, although not aware either directly or indirectly of the December 15, 1980 memorandum, just happened to report on information contained in that memorandum, and just happened to attribute it to the personal files of the FBI Director, is a preposterous one. Schiavone's second letter to Time states that "the TIME article obviously refers" to the December 15, 1980 memorandum.

*tif. denied,* 44 N.J. 398, 209 A.2d 138 (1965),[7] *Medico's* holding that the source of the information contained in an official record or proceeding is not relevant to the applicability of the privilege is controlling in construing New Jersey law as well as Pennsylvania law.[8]

Plaintiffs' second contention is that their assertion of malice is sufficient to defeat a motion to dismiss, since the fair report privilege may be defeated if it is shown that the publisher acted for the sole purpose of harming the person defamed. Several New Jersey cases, following § 611 of the First Restatement, have held that a showing of ill motive or malice in fact would eliminate the protection offered by the fair report privilege. *Swede,* 30 N.J. at 332, 153 A.2d 36; *Coleman,* 29 N.J. at 379–81, 149 A.2d 193; *Nusbaum,* 86 N.J.Super. at 137, 206 A.2d 185. We do not feel, however, that the New Jersey Supreme Court would so hold were it presented with the question today. First, we note that the Second Restatement has expressly eliminated the requirement that a publication otherwise protected by the privilege not be "made solely for the purpose of causing harm." *See* Reporter's Note, Restatement (Second) of Torts § 611 (App.1981); L. Eldredge, The Law of Defamation § 79a, at 422 (§ 611 of the Second Restatement makes the fair report privilege a complete

one, irrespective of malice). Since the reported New Jersey cases have followed the Restatement formulation of the fair report privilege, the New Jersey Supreme Court would undoubtedly find this elimination of the malice requirement to be persuasive. Second, there are significant constitutional problems with a doctrine that conditions the right of the press to fairly and accurately report on official records and proceedings on the motives of the publisher. The ability of a plaintiff to defeat a motion to dismiss by alleging malice in a case based on the accurate reporting of an allegedly defamatory statement in an official record or proceeding could create some chilling of the reporting on such records or proceedings. Such a chill is unwarranted. *See* Sowle, Defamation and the First Amendment: The Case for a Constitutional Privilege of Fair Report, 54 N.Y.U.L.Rev. 469, 541–42 (1979) (constitutional report privilege "should not be defeated by a showing of any sort of malice"); Note, Constitutional Privilege to Republish Defamation, 77 Colum.L.Rev. 1266, 1279 (1977) (republication privilege should not be conditioned on a lack of ill will).[9] Whether or not the constitution mandates that the fair report privilege not be defeated by a showing of ill will, it is clear that the constitutional concerns involved are relevant in predicting how the New Jersey Supreme Court would

---

7. Plaintiffs cite *Lawrence v. Bauer Pub. & Print, Ltd.,* 89 N.J. 451, 461, 446 A.2d 469 (1982) for the proposition that the New Jersey Supreme Court has left open the question of whether the fair report privilege applies when the account of an official proceeding is obtained through an intermediary rather than directly. Plaintiffs' Br. at 9. *Lawrence,* however, does not discuss the fair report privilege at all, since the privilege in that case "was not seriously asserted by defendants." *Id.* at 461, 446 A.2d 469 n. 3. Plaintiffs' citation to the case is therefore misleading. The question that *Lawrence* leaves open is whether, to establish the truth defense, one who repeats and attributes a defamatory statement must demonstrate the truth of the statement repeated or merely the fact that the person originally making the statement actually made the statement. *See Medico,* 643 F.2d at 147 (leaving open the same question).

8. The Second Circuit has criticized *Medico's* holding in this respect. *Bufalino,* 692 F.2d at 271. Whatever the merits of the Second Circuit's argument, we are bound by the Third Circuit, not by its critics elsewhere.

9. In *Greenbelt Cooperative Publishing Ass'n v. Bresler,* 398 U.S. 6, 10, 90 S.Ct. 1537, 1540, 26 L.Ed.2d 6 (1970), the Court stated that an instruction which allowed the protection given by *New York Times Co. v. Sullivan,* 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964) to be defeated by a showing of "spite, hostility or deliberate intention to harm" was "error of constitutional magnitude." Quoting *Garrison v. Louisiana,* 379 U.S. 64, 73, 85 S.Ct. 209, 215, 13 L.Ed.2d 125 (1964), the Court stated that "[d]ebate on public issues will not be uninhibited if the speaker must run the risk that it will be proved in court that he spoke out of hatred..." *Greenbelt,* 398 U.S. at 10–11, 90 S.Ct. at 1540.

decide as a matter of New Jersey law the effect of a showing of ill will. *See Medico,* 643 F.2d at 143–46 (constitutional considerations are relevant to determining the scope of the Pennsylvania fair report privilege). Thus, given the elimination of the absence-of-ill-will condition in the Second Restatement and the constitutional problems that such a condition creates, we conclude that under New Jersey law the fair report privilege may not be defeated by a showing of malice in fact.

We note that even if the formulation contained in the First Restatement were the law of New Jersey, plaintiffs' assertion of malice would not withstand a motion to dismiss. This formulation requires not merely that a defendant be motivated by ill will toward the plaintiff, but that malice in fact be the *sole* motivation for republication. No such allegation appears anywhere in the complaint or in the papers submitted by plaintiff in opposition to the motion to dismiss. Indeed, it is inconceivable that any such allegation would ever be supportable. *See* L. Eldredge, The Law of Defamation § 79a, at 421 (Section 611 of the First Restatement gave the news media, as a practical matter, "a complete immunity for publishing a fair and accurate report because a newspaper, for example, would always have as one purpose, informing the public").[10]

Finally, plaintiffs allege that the Time article is not a fair or accurate and complete report of the December 15, 1980 memorandum since it did not include the statement in the memorandum that the references to Schiavone in the Hoffex files did not suggest "any criminality or organized crime associations." There is a substantial question as to whether this argument is properly before us, since it is not set forth in the complaint or in the papers filed by plaintiff in response to the motion to dismiss and is inconsistent with the position taken by plaintiffs prior to the litigation that they had "no doubt" that the information that Time received from governmental sources was "accurately reported." *See supra* at 3–4; Tr. of Proceedings, July 11, 1983, at 9–11.[11] Assuming for the purposes of argument that we may now consider the contention raised at oral argument that the Time article was not fair and accurate, we must reject it. The paragraph of the article that plaintiffs contend is defamatory refers only incidently to Schiavone—its main point regards the failure of the FBI to inform Silverman and the Senate committee considering Donovan's confirmation that its Hoffex files contained references to Schiavone. In the light of the thrust of the paragraph, it is the existence of the references, not any characterization of those references, which is relevant. Since the Time article is totally accurate insofar as it states that Webster's personal files indicate that the Hoffex files contained references to Schiavone, it is clear that the article is a fair report of those files regardless of its failure to summarize Webster's characterization of the references. Plaintiffs' argument that the issue of the accuracy of Time's account of the December 15, 1980 memorandum must be submitted to the jury therefore fails.

In deciding defendant's motion to dismiss, we have been guided by the admonition of

---

10. The assertion of malice is, of course, inconsistent with Schiavone's statements before the litigation commenced that Time was "innocent" in publishing allegations about Schiavone and Donovan, and that its actions were understandable, and "indeed in most cases, forgivabl[e]." Since these statements are contained in an exhibit to the complaint, we may consider them in deciding a motion to dismiss. *Melo-Sonics Corp. v. Cropp,* 342 F.2d 856, 858 (3d Cir.1965).

11. At oral argument, plaintiffs argued that the second letter sent by Schiavone to Time asserted that Time's reportage was incomplete, although accurate, in that it did not include the statement that the references to Schiavone did not suggest any criminality. A review of the full text of the letter, particularly in light of the complaint and plaintiff's brief in opposition to the motion to dismiss, clearly indicates that the "incompleteness" referred to in Schiavone's letter is the failure to report on Silverman's supplemental report, not the failure to include in the original article the statement that the references to Schiavone in the FBI files did not indicate any criminality.

the New Jersey Supreme Court that defamation actions be dismissed as soon as it appears that they are without merit. As stated in *Maressa v. New Jersey Monthly,* 89 N.J. 176, 196, 445 A.2d 376, *cert. denied,* —— U.S. ——, 103 S.Ct. 211, 74 L.Ed.2d 169 (1982):

> Our courts should resolve free speech litigation more expeditiously whenever possible. The perpetuation of meritless actions, with their attendant costs, chills the exercise of press freedom. To avoid this, trial courts should not hesitate to use summary judgment procedures where appropriate to bring such actions to a speedy end.

*Accord Kotlikoff v. The Community News,* 89 N.J. 62, 67–68, 444 A.2d 1086 (1982). The federal courts also approve a liberal use of summary procedures in defamation actions. *Schuster v. U.S. News and World Report,* 602 F.2d 850, 853 (8th Cir.1979); *Anderson v. Stanco Sports Library,* 542 F.2d 638, 641 (4th Cir.1976); *Bon Air Hotel Inc. v. Time, Inc.,* 426 F.2d 858, 865 (5th Cir.1970); *Washington Post Co. v. Keogh,* 365 F.2d 965, 968 (D.C.Cir.1966), *cert. denied,* 385 U.S. 1011, 87 S.Ct. 708, 17 L.Ed.2d 548 (1967). Cases involving the valid assertion of the fair report privilege are especially good candidates for such procedures, since the "existence and breadth of the privilege concerning reports of official or judicial proceedings are matters of law appropriate for summary disposition." *Williams v. WCAU–TV,* 555 F.Supp. 198, 201 (E.D.Pa.1983). Here, a simple comparison of the allegedly defamatory statement with the December 15, 1980 memorandum demonstrates that the Time article is an accurate account of an official record or proceeding. Since defendant need show no more to defeat this action, the complaint must be dismissed.