SCHIAVONE CONSTRUCTION CO. and Ronald A. Schiavone, Plaintiffs,

v.

TIME, INCORPORATED, Defendant.

Civ. A. No. 83–932.

United States District Court,
D. New Jersey.

Nov. 6, 1986.

Winne, Banta, Rizzi, Hetherington & Basralian, Hackensack, N.J., Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendant.

Connell, Foley & Greiser, Roseland, N.J., for plaintiffs.

## OPINION

SAROKIN, District Judge.

This case requires the court to determine under what circumstances, if any, a public figure is entitled to recover punitive damages against a media defendant in a libel action. Because of the importance of a free press, some have urged the total abolition of punitive damages in such actions. But certainly in those cases in which a publisher has knowingly reported false information for the specific purpose of injuring someone's reputation, such action should be punished. An intentional or wanton and reckless abuse of the power of the press should not be immune from a punitive damage award. However, the danger from permitting any libel award is apparent. As this court previously stated in this matter:

> This action *may* result in a verdict favorable to the plaintiffs; but it may also, along with other defamation cases, result in a timorous and tentative press content to report on births, weddings, deaths and craft fairs. While it is essential to protect individuals from a powerful media which can destroy reputations forever through an abuse of that power, the greater danger lies in the destruction of the independence of the media itself.

*Schiavone Constr. Co. v. Time, Inc.*, 619 F.Supp. 684, 710 (D.N.J.1985).

Punitive damage awards have within their power not only the ability to punish, but to destroy as well. And although the threat of punitive damages may well deter the false statement, it may deter the truth as well. The mere threat or possibility of a

libel action with its vast costs of defense and potential adverse verdict must dampen the enthusiasm for vigorous reporting. If added to that is the spectre of punitive damages, awarded with unbridled discretion by juries, then the chilling effect may turn the reporter's zeal to ice.

To opt for an outright ban of all punitive damage awards in such actions would require the court to ignore substantial binding precedent which permits them. However, the balance may be struck by not permitting such awards in the absence of proof of compensatory damages, since it places no undue burden upon the party defamed to demonstrate that he has actually been injured before he can demand that the defamer be punished. For the reasons hereinafter set forth, plaintiffs are not entitled to recover punitive damages because they cannot recover compensatory damages. As a result, defendant is entitled to summary judgment.

BACKGROUND [1]

This is a libel action brought by Schiavone Construction Company and Ronald A. Schiavone [2] against Time, Inc. regarding a magazine article published in the August 23, 1982 issue of *Time* magazine. The article, entitled "Jury Still Out: Donovan probe is reopened," stated that Special Prosecutor Leon Silverman had reopened his investigation of then Secretary of Labor Raymond Donovan. The article, after noting that Phase II of the inquiry would focus on charges that Donovan met with two known mobsters near Miami in January 1979, discussed Silverman's failure in the first phase to pursue all leads concerning the Miami meeting. The article's final paragraph stated:

> The FBI faces some tough questioning of its own. The Senate Labor Committee is investigating the bureau's handling of Donovan's confirmation probe 18 months ago. The personal files of FBI Director William Webster, forwarded to the committee last month, reveal that the name of Schiavone appeared several times in the bureau's reports on the 1975 disappearance of former Teamster Boss Jimmy Hoffa. That detail would surely have intrigued both the Senate committee that approved Donovan's nomination in February 1981, and the special prosecutor this year. But neither learned about it until last month.

Schiavone challenges only this paragraph. The background to the publication of this article is as follows.

In February 1981, *Time* assigned Senior Correspondent Alexander McNeil (Sandy) Smith to cover "the Donovan case." In June 1982, Smith learned of the contents of a confidential memorandum, dated December 15, 1980, from FBI Director Webster to the FBI's Executive Assistant Director. The memorandum reported December 12 conversations between Mr. Webster and Edwin Meese and Pen James, both staff members of then President-elect Reagan. The memorandum states, in relevant part, that Mr. Webster advised Mr. Meese "that a company, Chivone (PH), in which [Donovan] apparently had a very substantial interest, had appeared a number of times in reports in our HOFEX case, but that none of these suggested any criminality or organized crime accusations." The "HOFEX case" refers to the investigation of the disappearance of Jimmy Hoffa.

Smith weighed the Webster memorandum against the substantial fund of information he had garnered concerning Donovan and Schiavone. According to Smith, the only information in the Webster memorandum that was not contradicted by this information was Mr. Webster's statement that the Schiavone Co. had appeared a number of times in reports of the HOFEX case. The exculpatory phrase—that none of the references suggested criminality—was contradicted by other information that,

1. For a complete statement of facts and procedural history with citations to the record, *see Schiavone Construction Co. v. Time, Inc.,* 619 F.Supp. 684, 686–693 (D.N.J.1985).

2. For ease of reference, the court will refer to plaintiffs collectively as "Schiavone."

according to Smith's confidential sources, was in the FBI's possession.

Smith attempted unsuccessfully to verify the memorandum. Three confidential sources told Smith that the Schiavone references in the HOFEX file were missing or could not be found.

On July 21, 1982, Smith met with Special Prosecutor Silverman. Smith told Silverman that the FBI had acknowledged that Schiavone's name appeared in connection with the Hoffa case. Silverman responded that he knew of nothing linking any Schiavone principals to that case. Silverman told Smith that he would search for the HOFEX references. Smith and Silverman met again on August 12, 1982. Silverman told Smith that the Schiavone name did not appear in the HOFEX files, and that Mr. Webster had erred in his memorandum.

In August 1982, *Time* decided to run a story on the shortcomings of the FBI's and/or the Department of Justice's Donovan investigation. Smith submitted his reporter's file to the New York bureau as the basis for the article. The file said that the Webster memo stated that the Hoffa file contained Schiavone references; Smith deliberately excluded from the file that the Webster memo further stated that "none of these suggested any criminality or organized crime associations." Smith, in deposition testimony, stated that he deleted the phrase because it was not central to the thrust of his story, because it was contradicted by other information that Smith had, and because it was ambiguous. Smith included the section on the Schiavone references, despite his inability to verify the existence of the references, because their existence was the only thing in Webster's memorandum not contradicted by his confidential sources.

A staff writer authored the August 23, 1982 article based on Smith's file.

This case was filed on March 17, 1983. On August 13, 1983, the Honorable Herbert J. Stern granted Time's motion to dismiss on the ground that the New Jersey fair report privilege barred Schiavone's claim in that the article was "an accurate account of an official record or proceeding." *Schiavone Constr. Co. v. Time, Inc.,* 569 F.Supp. 614, 621 (D.N.J.1983). On May 25, 1984, the Third Circuit reversed, holding that there existed "a question of fact as to the fairness of *Time* 's summarization of the Webster memorandum so as to preclude a determination by the District Court that publication of the article was privileged as a matter of law." *Schiavone Constr. Co. v. Time, Inc.,* 735 F.2d 94, 98 (3d Cir.1984).

On December 5, 1984, Judge Stern recused himself and the case was assigned to this court. On November 22, 1985, the court made the following rulings: 1) the challenged statement is defamatory *per se;* 2) a genuine issue of fact exists as to whether the challenged statements are "of and concerning" Ronald A. Schiavone; 3) Time's fair reportage, neutral reportage, and truth defenses are stricken; 4) the plaintiffs are public figures; 5) a genuine issue of fact exists as to whether Time acted with "actual malice."

Time now moves for summary judgment, arguing that plaintiff has suffered no actionable injury as a matter of law. After briefing and oral argument on the original motion, at which plaintiffs conceded their inability to prove compensatory damages, the court requested additional briefing upon the availability of punitive damages to the plaintiffs.

For the alternative reasons set forth below, the court grants Time's motion for summary judgment.

DISCUSSION

The common law of defamation permits a libel plaintiff to seek compensatory, punitive, and nominal damages. *See, e.g.,* W. Keeton, D. Dobbs, P. Keeton, D. Owen, *Prosser and Keeton of the Law of Torts,* @116A at 842 (5th ed. 1984) [hereinafter Prosser on Torts]. New Jersey recognizes these three basic types of legal damages. *See Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 48, 477 A.2d 1224 (1984). The court first examines whether

Schiavone is precluded, as a matter of law, from recovering compensatory damages.

## I. *Compensatory damages*

Plaintiff Schiavone Construction Co. admits in interrogatory answers that it "limits its claim for pecuniary damages to a nominal award." Affidavit of Peter G. Banta (4/4/86), Exh. A. Schiavone's counsel at oral argument on a motion for reconsideration stated that "there may be problems with respect to compensatory damages" and that plaintiffs "might well be content to take a nominal award plus a punitive award." Transcript of March 7, 1986. Schiavone, in their briefs on the current motion, insist that they "have not waived their right" to offer compensatory damage proofs, Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment (April 29, 1986), at 6, and that they will offer such proofs "if necessary to sustain a cause of action." Plaintiffs' Brief in Opposition to Defendant's Motion for Summary Judgment (July 2, 1986), at 3–4. Given this ambiguity, the court proceeds as if plaintiffs' intend to seek compensatory damages at trial.

The court finds that plaintiffs cannot recover compensatory damages as a matter of law. The court bases its ruling on the "libel-proof plaintiff" doctrine.

This doctrine recognizes that certain statements, as a matter of law, cannot damage the reputations of certain plaintiffs—the plaintiffs, in essence, are "libel-proof." *See generally* Note, *The Libel-Proof Plaintiff Doctrine,* 98 Harv.L.Rev. 1909 (1985).[3] Courts have found plaintiffs libel-proof in two senses. First, certain plaintiffs have such poor reputations on a

particular issue that no further statements on that issue could cause injury. *See, e.g., Cardillo v. Doubleday & Co., Inc.,* 518 F.2d 638, 639 (2d Cir.1975); *Wynberg v. National Enquirer, Inc.,* 564 F.Supp. 924, 928–29 (C.D.Cal.1982); *cf. Marcone v. Penthouse Int'l Magazine for Men,* 754 F.2d 1072, 1078–79 (3d Cir.1985) (applying *Cardillo* and *Wynberg* but finding plaintiff not to be libel-proof), *cert. denied,* — U.S. ——, 106 S.Ct. 182, 88 L.Ed.2d 151 (1986). This "issue-specific" libel-proof doctrine involves comparison of the issue raised by the allegedly defamatory statements with the issue on which plaintiff's reputation is previously tarnished. Second, the unchallenged portion of a communication may so damage a plaintiff's reputation that the challenged portion may be found to cause no further meaningful injury. *See Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298, 303 (2d Cir.1986); *Simmons Ford, Inc. v. Consumers Union,* 516 F.Supp. 742 (S.D.N.Y.1981). This "incremental harm" aspect of the doctrine calls for comparison of the challenged and unchallenged sections of the communication at issue. This case implicates both branches of the doctrine.[4]

The challenged statements in the *Time* article reported that "the name of Schiavone appeared several times in the [FBI's] reports" on the disappearance of Jimmy Hoffa and that these references "would surely have intrigued" those investigating Donovan's nomination. Time argues that these statements concern Schiavone's connection with organized crime. In light of the hundreds of published reports tying Schiavone to organized crime, including unchallenged statements in the Time

---

**3.** This doctrine emanates from the First Amendment. *See Cardillo v. Doubleday & Co., Inc.,* 518 F.2d 638 (2d Cir.1975); Note, 98 Harv.L.Rev. at 1929 (noting that the doctrine satisfies the court's "special obligation under the first amendment to establish meaningful and predictable libel law standards"). New Jersey courts have not considered whether state libel law recognizes such a doctrine.

**4.** The District of Columbia Circuit has rejected both branches of the libel proof plaintiff doc-

trine. *See Liberty Lobby, Inc. v. Anderson,* 746 F.2d 1563, 1568–69 (D.C.Cir.1984), rev'd on other grounds, — U.S. ——, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). This court finds the *Liberty Lobby* opinion unpersuasive. Furthermore, the Third Circuit has recognized implicitly the validity of the doctrine, though it has not yet found a plaintiff libel-proof. *See Marcone v. Penthouse Int'l Magazine for Men,* 754 F.2d 1072, 1078–79 (3d Cir.1985), *cert. denied,* — U.S. ——, 106 S.Ct. 182, 88 L.Ed.2d 151 (1986).

article itself reporting on Schiavone's underworld connections, Time argues that the challenged statement cannot further injure plaintiffs' reputation.

The court agrees. In a previous opinion in this case, the court stated:

> Here, even if plaintiffs are successful in establishing liability, as they may well be, it is unlikely that they will be able to prove damages attributable to the particular falsehood alleged in view of the vast publicity given to all facets of the Donovan controversy. Indeed, those parts of the article not alleged to be defamatory are, perhaps, more damaging than that which is the subject of this suit.

*Schiavone Constr. Co. v. Time, Inc.,* 619 F.Supp. 684, 686 (D.N.J.1985).

Plaintiffs counter by claiming that the challenged statement goes beyond simply connecting Schiavone to organized crime. The passage, plaintiffs contend, accuses them of murdering Jimmy Hoffa, an accusation different in kind from any previously published statements. Plaintiffs, however, mischaracterize the challenged paragraph. A statement that Schiavone's name appeared in the FBI's Hoffa files is not an accusation of murder. The connection of Hoffa to organized crime is notorious. Schiavone's alleged involvement with underworld figures, as stated above, has been widely catalogued. The statement that Schiavone's name was in the Hoffa files—without specifying the nature of the references—does nothing more than reassert the claims of Schiavone's ties with organized crime.

The facts of this case resemble those in the Second Circuit's recent reaffirmation of the libel-proof plaintiff doctrine, *Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298 (2d Cir.1986). In that case, the court found that Bob Guccione, publisher of *Penthouse*

magazine, was libel proof on the issue of his adultery. The court rejected the argument that Guccione could not be libel-proof because he had never been convicted of adultery. *Id.* at 303. The court found Guccione's reputation to be tarnished due to magazine and newspaper articles reporting his adulterous relations. *Id.* at 304; *cf. Wynberg v. National Enquirer, Inc.,* 564 F.Supp. 924, 928–29 (C.D.Cal.1982) (finding a plaintiff libel-proof based on both past convictions and adverse media coverage).

This doctrine does not and should not prevent the imposition of liability merely because the person allegedly defamed already has a bad reputation. In order to be shielded from liability, the statement upon which the claim is based must deal with the same matters upon which the person's bad reputation is founded. The fact that a person has a reputation as a liar would not make him libel proof against charges that he is a thief.

■ Further, it is not the mere repetition of the same or similar defamatory statements which invokes the doctrine. Rather it arises after the publicity of the claims is so widespread that further repetition can do no further harm to the person allegedly defamed. Such is the situation in this case. The widespread national coverage of Schiavone's alleged ties to organized crime, then, constitutes sufficient evidence to support the court's finding that plaintiff suffered no injury as a matter of law.[5]

The court concludes, as a matter of law, that Schiavone has suffered no injury to reputation as a result of the challenged *Time* passage. Thus, Schiavone cannot recover compensatory damages.

## II. *Punitive and nominal damages*

The court has ruled that Schiavone has not suffered injury to reputation and there-

---

**5.** Time contends that this case is controlled by *Herbert v. Lando,* 781 F.2d 298 (2d Cir.1986). The *Herbert* court, denying that it was applying the "incremental-harm" branch of the libel-proof doctrine, held that two statements in a communication were "nonactionable" because their defamatory implication was "subsidiary" to the implication of other parts of the commu-

nication found to be nonactionable. *Id.* at 311–12.

This court finds the reasoning in *Herbert* inapplicable to the case at hand. The court finds, based on the libel-proof plaintiff doctrine, that the challenged statements as a matter of law did not harm plaintiffs' reputation.

fore cannot recover compensatory damages as a matter of law. Schiavone claims, however, that it nonetheless can seek punitive damages. Furthermore, because the challenged statements are defamatory *per se*, *see Schiavone Constr. Co. v. Time, Inc.*, 619 F.Supp. 684, 694–95 (D.N.J.1985), Schiavone is entitled to nominal damages given that the statements are defamatory *per se. See, e.g., Restatement (Second) of Torts* § 620 comment a (stating that nominal damages are awarded when the plaintiff's "bad character" leads jury to believe that plaintiff has suffered no serious injury to reputation). Given this background, the court faces two questions: 1) Can Schiavone, in the absence of injury to reputation, maintain this libel action for punitive and nominal damages? 2) If so, can Schiavone, as a matter of law, recover punitive damages? The court examines these two questions under both New Jersey tort law and federal constitutional principles.[6]

### A. *New Jersey law*

The court concludes that New Jersey tort law would permit Schiavone to pursue punitive and nominal damages in this case.

#### 1. *Can the cause of action be maintained?*

New Jersey law provides that punitive damages may be awarded in intentional tort cases whether or not compensatory damages are recoverable, as long as the plaintiff has suffered "some injury, loss, or detriment." *See Nappe v. Anschelewitz, Barr, Ansell & Bonello*, 97 N.J. 37, 51, 477 A.2d 1224 (1984). In other words, a plaintiff who can recover nominal damages may seek a punitive award.

The New Jersey Supreme Court in *Nappe*, a fraud case, recognized that punitive awards serve deterrent and retributive purposes not furthered by compensatory

damages. *See id.* at 48–49, 477 A.2d 1224. Furthermore, the court stated:

> Because of the fortuitous circumstance that an injured plaintiff failed to prove compensatory damages, the defendant should not be freed of responsibility for aggravated misconduct. People should not be able with impunity to trench wilfully upon a right. Moreover, it is especially fitting to allow punitive damages for actions such as legal fraud, since intent rather than mere negligence is the requisite state of mind.

*Id.* at 50, 477 A.2d 1224.

The court has found no indication in New Jersey case law that *Nappe* was not intended to apply to libel cases. In fact, the *Nappe* court referred to the common law tendency to sustain libel actions in the absence of proof of compensatory damage. *See id.* at 47, 477 A.2d 1224.

Schiavone has been wronged, even if he can prove no injury to reputation—under *Nappe*, then, Schiavone may maintain the libel action. The court holds that New Jersey tort law permits Schiavone to maintain an action solely for nominal and punitive damages.

#### 2. *Can punitive damages be recovered?*

N.J.S.A. § 2A:43–2, enacted in 1898, governs the "damages recoverable" in libel actions against "the owner, manager, editor, publisher or reporter of any newspaper, magazine, periodical, serial or other publication in this state":

> [P]laintiff, unless he shall prove either malice in fact or that defendant, after having been requested by plaintiff in writing to retract the libelous charge in as public a manner as that in which it was made, failed to do so within a reasonable time, shall recover only his actu-

---

**6.** Libel cases, though carrying first amendment implications, remain state causes of action. See, e.g., *Marcone v. Penthouse International Magazine for Men*, 754 F.2d 1072, 1077 (3d Cir.), *cert. denied*, — U.S. ——, 106 S.Ct. 182, 88 L.Ed.2d 151 (1985). In determining the applica-

ble New Jersey law, this court's duty is to predict "how the state's highest court would decide were it confronted with the problem." *McKenna v. Ortho Pharmaceutical Corp.*, 622 F.2d 657, 661 (3d Cir.1980).

al damage proved and specially alleged in the complaint.

Thus, before recovering punitive damages, plaintiff must establish either *Time*'s failure to retract upon plaintiff's request[7] or *Time*'s "malice in fact."

"Malice in fact" in N.J.S.A. § 2A:43–2 refers to the common law requirement that a plaintiff must show defendant's wrongful motive before recovering punitive damages. That "malice in fact" means common law malice is clear both from the law's 1898 enactment date and from early case law interpreting the requirement to mean "express malice."

> Express malice consists in such a publication from ill-will, or some wrongful motive implying a willingness or intent to injure in addition to the intent to do the unlawful act. It requires affirmative proof, beyond the act of publishing, indicating ill-feeling, or such want of feeling as to impute a bad motive.

*Weir v. McEwan,* 94 N.J.L. 92, 94, 109 A. 355 (1920). More recently, the New Jersey Supreme Court has reiterated the content of common law malice.

> To warrant a punitive award, the defendant's conduct must have been wantonly reckless or malicious. There must be an intentional wrongdoing in the sense of an "evil-minded act" or an act accompanied by a wanton and wilful disregard of the rights of another.

*Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49, 477 A.2d 1224 (1984); *see Enright v. Lubow,* 202 N.J.Super. 58, 76, 493 A.2d 1288; *Nappe v. Anschelewitz, Barr, Ansell & Bonello,* 97 N.J. 37, 49, 477 A.2d 1224 (1984); *see Enright v. Lubow,* 202 N.J.Super. 58, 76, 493 A.2d 1288 (Super. Ct.App.Div.1985). The New Jersey definition parallels that of the common law in general. *See, e.g., Smith v. Wade,* 461 U.S. 30, 45–48, 103 S.Ct. 1625, 1634–36, 75 L.Ed.2d 632 (1983) (explaining that the common law permitted recovery of punitive damages upon showing of either malicious intent or reckless indifference to the rights of others); *Prosser on Torts,* @2 at 9–10 (stating that to recover punitive damages "[t]here must be circumstances of aggravation or outrage, such as spite or "malice" or a fraudulent or evil motive on the part of the defendant, or such a conscious and deliberate disregard of the interests of others that the conduct may be called wilful or wanton").

The court finds no meaningful difference between the second prong of common law malice—reckless or wilful disregard of the plaintiff's rights—and *New York Times* actual malice—reckless disregard of the truth or falsity of the statement. *See infra* at Section B.2. (discussing the relationship of common law malice and *New York Times* actual malice). This court has held previously that Schiavone has raised a genuine issue of fact with respect to *Time*'s actual malice. *See Schiavone v. Time, Inc.,* 619 F.Supp. 684, 707–09 (D.N.J.1985). Thus, the court's previous ruling indicates that Schiavone may seek punitive damages under N.J.S.A. § 2A:43–2.

### B. *Federal constitutional law*

The court holds that the first amendment mandates that *Time*'s summary judgment motion be granted, because Schiavone has suffered no compensable injury to reputation, and Schiavone cannot recover punitive damages as a matter of law absent such injury. Schiavone cannot maintain this libel action solely to recover nominal damages.

The majority of jurisdictions at common law require a libel plaintiff to prove that he has sustained "actual damages" as a prerequisite to recovery of a punitive award. See I J. Ghiardi & J. Kircher, *Punitive Damages: Law and Practice,* § 13.15 at 53; *Prosser on Torts,* § 2 at 14. These jurisdictions differ, however, on what must be shown to meet the actual damage requirement. A minority holds that plaintiff must show compensatory damages capable of estimation; most jurisdictions, including New Jersey, *see supra,* hold that the show-

---

7. Given the court's ruling concerning "malice in fact," *see supra,* the court does not rule on whether Schiavone can establish *Time*'s failure to retract.

ing of some wrong to plaintiff, giving rise to nominal damages, is sufficient to support a punitive award. See I J. Ghiardi & J. Kircher, § 13.15 at 53–54; *see also Restatement (Second) of Torts* § 908 comment c (1979) (stating in general that "an award of nominal damages is enough to support a further award of punitive damages"). Under this view, the violation of plaintiff's rights that gives rise to the nominal damages suffices to sustain the cause of action. *See Restatement (Second) of Torts* § 620 and comment a (1979).

■ This court believes that the first amendment imposes a greater burden on public figure libel plaintiffs than does the common law majority rule. The court holds that public figure libel plaintiffs, who sue media defendants for statements concerning matters of public concern, must prove compensable injury to reputation in order to maintain a cause of action.

The Supreme Court in *Gertz* recognized that in defamation actions the free speech rights of defendants must be balanced against "the strong and legitimate state interest in compensating private individuals for injury to reputation." *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 348–49, 94 S.Ct. 2997, 3011, 41 L.Ed.2d 789 (1973). The court stressed that "this countervailing state interest extends no further than compensation for actual injury." *Id.* at 349, 94 S.Ct. at 3011. This broad principle, however, spawned only a narrow holding. The court held that public figure plaintiffs, before recovering punitive or presumed damages, must show that the defendant acted with *New York Times* actual malice. *Id.*

*Gertz*'s reasoning that the only state interest sufficient to limit first amendment freedoms is compensation for injured reputation cannot be confined to this single holding. Commentators recognize that *Gertz* calls into serious question the viability of any libel suit that does not redress injury to reputation. *See Prosser on Torts,* § 116A at 845 (suggesting that the first amendment may require "at least actual harm of some nature justifying a recovery of actual damages" as a prerequisite to a judgment for a public figure plain-

tiff); *Restatement (Second) of Torts* § 620 comment c (1979) (suggesting that actual compensable harm may be a "necessary requisite for the existence of any liability for defamation," though stating further that "it seems most likely" that such a requirement will not be held to apply if *New York Times* actual malice is proved).

The Supreme Court has not decided whether *Gertz* and its successors require a public figure plaintiff to prove compensable damage before seeking a punitive award. Recently, however, the Court reasserted the vitality and clarified the effect of these cases.

> One can discern in these decisions two forces that may reshape the common-law landscape to conform to the First Amendment. The first is whether the plaintiff is a public official or figure, or is instead a private figure. The second is whether the speech at issue is of public concern. When speech is of public concern and the plaintiff is a public official or public figure, the Constitution clearly requires the plaintiff to surmount a much higher barrier before recovering damages from a media defendant than is raised by the common law.

*Philadelphia Newspapers, Inc. v. Hepps,* — U.S. ——, 106 S.Ct. 1558, 1563, 89 L.Ed.2d 783 (1986).

■ Schiavone, a public figure plaintiff suing *Time,* a media defendant, over a paragraph concerning a proposed appointment of a cabinet official must surmount a much higher barrier than is raised by the common law. This court concludes that, to surmount this barrier, Schiavone must prove compensable injury as a prerequisite to seeking punitive and nominal damages.

*Gertz* requires that "state remedies for defamatory falsehood reach no farther than is necessary to protect the legitimate interest involved." 418 U.S. at 349, 94 S.Ct. at 3012. Neither punitive damages nor nominal damages compensate for injury to reputation—the main, if not only legitimate state interest in defamation actions. Although punitive and nominal damages may serve lesser state interests, an action for recovery of these damages only

is not a permissible state remedy under the first amendment standard.

A punitive award, though, does serve retributive and deterrent functions. *See, e.g., Restatement (Second) of Torts* § 908(1) (1979). The *Gertz* court recognized, however, that "jury discretion to award punitive damages unnecessarily exacerbates the danger of media self-censorship." 418 U.S. at 350, 94 S.Ct. at 3012. The purpose of nominal damages is in "vindicating the plaintiff's character by a verdict of a jury that establishes the falsity of the defamatory matter." *See, e.g., Restatement (Second) of Torts* § 620 comment a (1979). Public figures like Schiavone, however, have enhanced access to public communication channels for "vindication" of their character—libel trials, with their attendant chill on the press, should not be the vehicle, particularly where no injury to reputation can be established. Neither punitive nor nominal damages redress injury to reputation; the limited interests that they may further do not outweigh the threat to first amendment freedoms entailed by libel suits.

The court recognizes that some decisions have found no constitutional infirmity in jury verdicts that have granted only a nominal and punitive award, without a finding of compensable damage. *See Buckley v. Littell,* 539 F.2d 882, 897 (2d Cir.1976), *cert. denied,* 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977); *Davis v. Schuchat,* 510 F.2d 731, 737–38 (D.C.Cir.1975); *Goldwater v. Ginzburg,* 414 F.2d 324 (2d Cir.1969). In contrast, however, courts finding plaintiffs libel-proof have dismissed libel actions despite the presence of punitive and nominal damage claims. *See Guccione v. Hustler Magazine, Inc.,* 800 F.2d 298 (2d Cir.1986) (dismissing, because the plaintiff was libel proof, a jury award of $1 nominal and $1.6 million punitive damages); *Cardillo v. Doubleday & Co., Inc.,* 518 F.2d 638 (2d Cir.1975) (dismissing, because the plaintiff was libel proof, an action seeking a $4 million punitive award, see 366 F.Supp. 92, 93 (S.D.N.Y.1973)); *Jackson v. Longcope,* 394 Mass. 577, 476 N.E.2d 617, 619 (1985) (denying a libel proof plaintiff the right to sue for nominal damages).

■ The court holds, as a matter of federal constitutional law, that a public figure cannot maintain a libel suit over statements of public concern against a media defendant absent a showing of compensable injury to reputation. Thus, Schiavone cannot maintain this action purely for nominal and punitive damages.

For the foregoing reasons, defendant's motion for summary judgment shall be granted.

CONCLUSION

By granting summary judgment now to defendant, all parties, including the plaintiffs, will avoid and save the vast expenditures of time and money which have become so commonplace in such actions. The need for summary disposition, where appropriate, is greatest in defamation actions since their mere pendency and the costs incident thereto diminish free speech irrespective of the eventual outcome. Although the media is entitled to no greater favor in the courts than any other business, their particular product is.